UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
-----------------------------------------------------------X
FRANK J. NAPOLITANO, JR.          :
        Plaintiff,                  :
                                                         :    Civil Action No. 07-0755
    -vs.-                           :
                                                         :
TOWN SPORTS INTERNATIONAL        :    **DECLARATION OF**
HOLDINGS, INC. and TOWN SPORTS   :    **RICHARD PYLE**
INTERNATIONAL, INC.,             :
        Defendants.                 :
-----------------------------------------------------------X

        RICHARD PYLE declares pursuant to 28 U.S.C. § 1746, under penalty of perjury under the laws of the United States of America, as follows:

        1.    I am the Chief Financial Officer and Executive Vice President of Town Sports International Holdings, Inc. ("Holdings"). I am familiar with the facts of this proceeding, and have reviewed my files concerning this matter. I make this affidavit based on my personal knowledge of the following facts and upon review of my files.

<u>Corporate Structure and Contacts With Pennsylvania</u>

        2.    Holdings is a publicly-traded corporation, organized under the laws of Delaware. Through its operating subsidiaries, Holdings owns and operates fitness centers in the Northeast and Mid-Atlantic regions of the United States. Holdings's corporate offices are in New York, at 888 Seventh Avenue in New York City, and its principal place of business is New York. Holdings has no presence in the Commonwealth of Pennsylvania: it is not authorized, licensed or registered to do business in Pennsylvania, does not own real property in Pennsylvania,

maintains no offices in Pennsylvania, leases no property in Pennsylvania, and has no business in Pennsylvania.

3.  Holdings does not have employees (other than its unpaid corporate officers, all of whom work out of New York), and operates principally as the publicly-traded parent of Town Sports International, LLC ("International"). As a result of a June 30, 2006 corporate restructuring, the company formerly known as Town Sports International, Inc. ("International Inc."), is now called Town Sports International, LLC. Holdings's principal asset is its equity ownership of International (as its principal asset prior to the restructuring was its equity ownership of International Inc.).

4.  Plaintiff was an employee of International Inc., a New York corporation with its corporate headquarters in New York. Though the corporate offices of International Inc. were in New York (and the corporate offices of International are in New York), out of convenience to Plaintiff, he was allowed to split his time between International Inc.'s New York office and an office located at the fitness center at 1 Highpoint Drive, Chalfont, PA ("Highpoint Club"), owned and operated by a subsidiary, TSI Highpoint, LLC.

5.  Though Plaintiff spent between 20-50% of his time working out of the office space at the Highpoint Club, at no point was Plaintiff ever an employee of TSI Highpoint, LLC. Plaintiff was also never an employee of Holdings.

The Stock Option Agreements

6.  In an earlier corporate restructuring, in February 2004 Holdings was formed to issue certain public-traded debt securities and to serve as the publicly-traded parent company of International Inc. (and now International) and its subsidiaries.

7. At that time, all stockholders of International Inc. exchanged their stock for an equivalent equity ownership interest in Holdings. Holders of options in International Inc. similarly exchanged those options for options in Holdings. Accordingly, new 2000 and 2003 Common Stock Option Agreements (options in Holdings) were issued to holders of options under the original 2000 and 2003 option agreements (options in International Inc.). Plaintiff, as a holder of options under the original 2000 and 2003 agreements, was issued new 2000 and 2003 options (collectively referred to as the "New 2000 and 2003 Option Agreements") in February 2004.

8. Though International Inc. is a signatory to the New 2000 and 2003 Option Agreements, it has no rights or obligations under them. The agreements call for Holdings (not International Inc. or International) to issue its stock upon Plaintiff's timely and proper exercise of his rights. As Holdings must issue stock under the New 2000 and 2003 Option Agreements, any breach of contract claim arising out of Holdings's failure to do so must lie against Holdings (as a wholly owned subsidiary of Holdings, International, successor to International Inc., is incapable of issuing the stock of its parent).

The Alleged Breach of Contract

9. Plaintiff claims to have exercised his options by dropping an uncertified personal check, post-dated Sept 5, 2006, and cover letter purporting to exercise options on the desk of Robert Herbst, Holdings's General Counsel, in New York on or about June 21, 2006. Neither Holdings, International Inc., nor International has a record of receipt of this letter.

10. Attached as Exhibit A is a true and correct copy of an email, with attachments, sent from Plaintiff to Robert Herbst, General Counsel of Holdings. Attached to that email was a copy of Plaintiff's purported exercise letter and a post-dated check.

11. The events leading up to the formation and alleged breach of the New 2000 and 2003 Option Agreements occurred in New York. The New 2000 and 2003 Option Agreements were negotiated in New York and signed by Holdings and International Inc. in New York. Plaintiff's purported performance—hand delivery of his exercise letter and check—occurred in New York. Holdings's decision not to issue stock to Plaintiff was made in New York. All likely witnesses except Plaintiff work in New York and reside in the New York metropolitan area. Lastly, all of defendants' files and documentary evidence relating to the stock options agreements are located in New York.

Dated: New York, New York
      April _lt_, 2007

*/s/ Richard Pyle*
RICHARD PYLE

# Exhibit A

## Herbst, Robert

| | |
|---|---|
| From: | Frank Napolitano [frankn@globalfi |
| Sent: | Wednesday, November 01, 2006 1 |
| To: | Herbst, Robert |
| Cc: | Giardina, Bob |
| Subject: | TSI Stock Options |

Robert,

As you might expect, I was taken aback by the news that you did not have the letter and check I placed on your desk this June, in which I expressed my desire to exercise my options, effective September 5. Last night I found the copy I made of the check and the letter. They are attached.

To reiterate what happened, I wrote this letter on June 20, twelve days after my official resignation. I brought it and the check with me to New York on the 21st. I had lunch with Bob G. that day. I then spent the afternoon turning in my TSI building ID, meeting one last time with my staff and doing one very important thing – delivering that letter and the check to you. I went to your office but you weren't there, so I placed it on your desk, as I have done with so many envelopes before.

As I thought about this last night a few things occurred to me.

It occurred to me that I felt comfortable putting this on your desk because I felt a part of the TSI team and believed that I would be treated that way. After all, I was attending dinner that night with everyone to celebrate the IPO, even though I had already resigned. It never occurred to me that you would not find the envelope; nor did it occur to me that there would be no way to prove that I placed it there (other than my word) if it were lost. I couldn't recall another time that I placed something on your desk and you didn't get it.

It also occurred to me that none of this should matter. Stock options are granted to people because they provide value to the company. They are earned. The timely exercise of those options is not a game. You know that I placed the letter and check on your desk because I said I did. You know I had the resources to exercise the options and that I had no earthly reason not too – after all they were in the money at all times and therefore of great value. So it is wholly illogical that I should find myself writing this e-mail now. I may have been foolishly naïve in my expectation that placing the letter on your desk would be sufficient and that you would contact me if there were anything else I needed to do. But that cannot result in me losing the value of these options.

I remembered last night that Debbie Smith had neglected to exercise her options when she resigned. It wasn't that she placed a letter on someone's desk that mysteriously disappeared. She just forgot. Of course the Board did the right thing afterwards and she purchased the shares she had earned.

I had a board meeting for GlobalFit a little while back. We had two directors leave the board and that triggered the start of a 90 day period for them to buy their option shares. Ira Lubert, the majority owner of GlobalFit and a seasoned billionaire investor asked me to send them a letter advising them of the start of the 90 days. Of course I did. We both recognized that they had earned the options and should have the opportunity to execute them. It was, after all, just about doing the right thing.

I am prepared to press the point that I did, in fact, give TSI timely notice of my intention to buy my option shares. But it really shouldn't be something we are at odds about. I earned those shares; I intended to and took steps to purchase those shares; and TSI should be happy to have me buy them. After all, this isn't a game, right?

Frank Napolitano
President & CEO

11/2/2006

Frank Napolitano
1237 Hoffman Road
Ambler, PA 19002
(215) 540-0287

June 20, 2006

Robert Herbst                                   By Hand Delivery
TSI
888 7th Avenue, 25th Floor
New York, NY 10106

Re: Exercise of Stock Options

Robert,

I know it's a bit early to do this since I have just left, but I don't want to forget. So I am giving you notice of my intention to purchase my vested stock option shares, as of September 7, 2006.

Obviously I know enough about the company to make this election, so I don't need you to send me any information.

I haven't seen the new pricing on any of the options after the recent stock split, so I have calculated the amount of the attached check based on the old numbers at $75 for 3,950 shares plus $144 for 200 shares, or $325,050. I have made the check out to TSI for that amount and dated it September 5, 2006. Please let me know if that is not correct after the split or if there is anything else I need to do.

Thanks, and I expect to be seeing you around.

Sincerely,

*[signature]*
Frank

|  |  |  |  |
|---|---|---|---|
| Original Strike | $ 75.00 | $ 144.00 |  |
| Original Shares | 3,950 | 200 |  |
|  | $ 296,250.00 | $ 28,800.00 | $ 325,050.00 |

---

**FRANK NAPOLITANO**
1237 HOFFMAN RD
AMBLER, PA 19002-5017

CMA Cash Management Account

108

DATE Sept 8, 2001    25-80/440

PAY TO THE ORDER OF  TSI                              $325,050 —

Three hundred and twenty five thousand & 50/100  DOLLARS

Merrill Lynch
Bank One, NA
Columbus, Ohio 43271

MEMO  Purchase Stock

⑈044000804⑈  0411538680⑆'⑈  0108