IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK J. NAPOLITANO, JR. | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 07-CV-755 |
| | : | |
| vs. | : | |
| | : | |
| TOWN SPORTS INTERNATIONAL HOLDINGS INC. and TOWN SPORTS INTERNATIONAL, INC. | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
PURSUANT TO FED. R. CIV. P. 56(a)**

Plaintiff Frank J. Napolitano, Jr., through his undersigned counsel, submits this Statement of Undisputed Facts in support of plaintiff's motion for summary judgment pursuant to Fed. R. Civ. P. 56(a):

1. Plaintiff Frank J. Napolitano, Jr., is an adult resident and citizen of Pennsylvania. Affidavit of Frank J. Napolitano, Jr. ("Napolitano Affid.") ¶ 1.

2. Defendant Town Sports International Holdings, Inc. ("TSI Holdings") is a Delaware corporation with its principal place of business in the State of New York. Napolitano Affid. ¶ 2.

3. Defendant Town Sports International, Inc. ("TSI") is a Delaware corporation with its principal place of business in the State of New York. Napolitano Affid. ¶ 3.

4. The defendants operate one of the nation's largest chains of sports and health clubs, virtually all of which are located in the New York, Philadelphia, Boston and Washington metropolitan areas. Napolitano Affid. ¶ 4.

5. The defendants' clubs in the New York area operate under the name "New York Sports Club." the clubs in and near Philadelphia operate under the name "Philadelphia Sports Club," the clubs in and near Washington, D.C. operate under the name "Washington Sports Club," the clubs in and near Boston operate under the name "Boston Sports Club," and all share a similar logo. Napolitano Affid. ¶ 4.

6. Plaintiff began work for TSI Highpoint, LLC ("Highpoint"), a subsidiary of defendant TSI and a remote subsidiary of TSI Holdings, on January 6, 2000. Napolitano Affid. ¶ 5.

7. Plaintiff's responsibilities, generally, were to participate in strategic planning for the corporate group of which Highpoint and defendants are a part; to lead the strategic planning group; to design club-centered programs for children, youth and families and other special projects; and to oversee market research and

product development aimed at expanding the market for the services of the corporate group. Napolitano Affid. ¶ 6.

8. The plaintiff's office during his employment with Highpoint was in Chalfont, Pennsylvania. Napolitano Affid. ¶ 6.

9. The plaintiff's salary was paid out of an account held by Highpoint, and his W-2's were issued by Highpoint. Napolitano Affid. ¶ 6.

10. None of plaintiff's cash compensation was paid directly by defendants TSI or TSI Holdings. Napolitano Affid. ¶ 6.

11. Many of the plaintiff's activities were centered upon, and directly benefitted, the Philadelphia Sports Club at Highpoint (owned by Highpoint), because it was that location which served, in effect, as a laboratory for many of the programs for children, youth and families which the plaintiff and his colleagues at Highpoint were developing. Napolitano Affid. ¶ 7.

12. In May, 2000, the plaintiff was offered and accepted options to purchase shares in TSI. Napolitano Affid. ¶ 8.

13. The options offered to plaintiff in 2000 were offered pursuant to a stock option agreement dated May 31, 2000 (the "Original TSI Option"). Napolitano Affid. ¶ 8.

14. The Original TSI Option included a vesting schedule that was dependent

upon the earnings of TSI; the options would vest sooner if earnings goals were met or exceeded and would vest more slowly if earnings fell short of those goals. Napolitano Affid. ¶ 9.

15. The Original TSI Option granted plaintiff the right to purchase 6,600 shares of class A common stock of TSI. Napolitano Affid. ¶ 10.

16. In early 2004, the shareholders of TSI agreed to create a new holding company; in connection with that agreement, they tendered their shares in TSI to TSI Holdings, in exchange for an equivalent number of newly-issued shares of TSI Holdings. Napolitano Affid. ¶ 10.

17. By action of the shareholders and Boards of Directors of TSI Holdings and TSI, the plaintiff's Original TSI Option (and similar options granted to others) were replaced by equivalent options to purchase shares of TSI Holdings. Napolitano Affid. ¶ 10.

18. A copy of the agreement by which plaintiff was granted options to purchase shares in TSI Holdings (the "First TSI Holdings Option" or the "First Option") as described in the preceding paragraph is attached as Exhibit A to the Napolitano Affidavit.

19. Under the terms of the First TSI Holdings Option the plaintiff received the right to purchase 6,600 shares of TSI Holdings. Napolitano Affidavit Exhibit

A.

20. Because TSI's earnings had exceeded the earnings goals set forth in the Original TSI Option, when the original options were converted to options to purchase shares of TSI Holdings, 3,960 of the 6,600 options were already vested. Napolitano Affid. ¶ 11 and Exhibit E.

21. Under those vested options, as described in the preceding paragraph, the plaintiff had the right to purchase the 3,960 shares at $75.00 per share. Napolitano Affid. ¶ 11 and Exhibit E.

22. The plaintiff received a second award of options on July 23, 2003 (the "Second TSI Option"), under which the plaintiff received the right to purchase 1,000 shares of TSI. Napolitano Affid. ¶ 12.

23. A copy of the Second TSI Option is attached as Exhibit D to the Napolitano Affidavit.

24. The Second TSI Option was converted in February, 2004, into an option to purchase an equivalent number of shares of TSI Holdings. Napolitano Affid. ¶ 12.

25. A copy of the agreement which reflects the conversion of the Second TSI Option into options to purchase shares of TSI Holdings is attached to the Napolitano Affidavit as Exhibit B. (Said agreement, as set forth in Exhibit B, is

referred to hereafter as the "Second TSI Holdings Option" or the "Second Option.")

26. The Second TSI Holdings Option granted plaintiff the right to purchase 1,000 shares of TSI Holdings at $144.00 per share. Napolitano Affid. ¶ 12.

27. Options to purchase 200 of the 1000 shares described in the preceding paragraph were vested and indefeasible as of February 11, 2004, and vested and indefeasible as of plaintiff's separation from Highpoint in 2006. Napolitano Affid. Exhs. C and E.

28. During 2005 or earlier, senior management of TSI Holdings began to formulate plans to conduct an initial public offering of the company's shares. Napolitano Affid. ¶ 14.

29. In contemplation of an initial public offering of shares of TSI Holdings, the plaintiff began discussions with the Chief Executive Officer of TSI Holdings, Robert Giardina, concerning the plaintiff's anticipated role in the corporate group after the offering. Napolitano Affid. ¶ 14.

30. Mr. Giardina made it clear that the plaintiff's services were valued and desired, but the parties were unable to agree fully on a job description and compensation. Napolitano Affid. ¶ 14.

31. The plaintiff agreed to stay in his job through the end of the anticipated public offering described in the preceding two paragraphs. Napolitano Affid. ¶ 14.

32. On or about June 2, 2006, under a plan of reorganization related to the initial public offering described in the preceding three paragraphs, the authorized shares of class A common stock of TSI Holdings were increased by a multiple of 14; that is, authorized shares of class A common stock of TSI Holdings were split, 14 to 1 (the "stock split"). Napolitano Affid. ¶ 15.

33. By operation of paragraph 2(f) of the First Option ("Adjustments upon Changes in Capitalization"), and a similar paragraph 2(f) of the Second Option, and by confirmatory action of the board of directors of TSI Holdings, the First and Second Options were recalculated, both as to shares and price-per-share, to account for the stock split. Napolitano Affid. ¶ 16.

34. As of June 8, 2006 (the date of his separation from employment with Highpoint) plaintiff held vested options to purchase 55,440 shares of TSI Holdings under the First Option, at a price per share of $5.36. Napolitano Affid. ¶ 17.

35. As of June 8, 2006, plaintiff held vested options to purchase 2,800 shares of TSI Holdings under the Second Option, at a price per share of $10.29. Napolitano Affid. ¶ 17.

36. The First and Second Options include substantially identical provisions (in each case, Section 4(a)) providing as follows:

> Expiration of Vested Options. Except as set forth in Section 4(b),

> Vested Options not exercised as of the Termination Date shall expire on the earliest to occur of (i) the date which is 90 days after termination of the Executive's employment with the Company for any reason (other than death or Disability in which case the Options shall expire on the date which is 120 days after the date of such termination), (ii) the consummation of a Sale of the Company, subject to <u>Section 3(b)</u> above and (iii) the Expiration Date.

Napolitano Affid. Exhs. A and B, Section 4(a).

37. On November 1, 2006, plaintiff provided notice by electronic mail that he had provided notice of exercise, and continued to desire to exercise, the vested portions of the First and Second Options. Napolitano Affid. ¶ 18.

38. Defendants declined to sell shares of common stock of TSI Holdings in response to plaintiff's notice of exercise, claiming that the notice was not received within 90 days of termination of plaintiff's employment with TSI Holdings. Napolitano Affid. ¶ 19.

39. Plaintiff has tendered to the defendants, by check, the full amount of the purchase price of shares subject to the First Option and the Second Option, to the extent options to purchase such shares were vested. Napolitano Affid. ¶ 20.

40. Shares of TSI Holdings are currently trading in public markets at prices

per share in excess of the prices at which plaintiff is entitled to purchase such shares under the First Option and the Second Options. Napolitano Affid. ¶ 21.

41. The shares subject to the First Option and the Second Option were fully reserved for the purpose of purchase by the plaintiff, and the accounting effect of the discount from market value that those options represented had already been fully recorded, as of June 8, 2006. Napolitano Affid. ¶ 22.

42. Stock subject to the First Option and the Second Option was sequestered and not available for sale to the public. Napolitano Affid. ¶ 22.

43. The First Option and the Second Option were granted to plaintiff as compensation for labor. Napolitano Affid. ¶ 23.

44. Through his efforts as an employee of Highpoint, plaintiff added value to the defendant corporations and to the shares representing ownership of defendant TSI Holdings. Napolitano Affid. ¶ 23.

45. By 2004, the exercise price under the First Option and the Second Option was lower than the fair market value of the shares to which those options related. Napolitano Affid. ¶ 13.

46. For the entire period of his employment from January 6, 2000 to June 8, 2006, the plaintiff's paychecks and year-end W-2 reports were issued by TSI Highpoint, LLC, a limited liability company operating in Bucks County,

Pennsylvania. Napolitano Affid. ¶ 24.

47. The Form W-2 attached as Exhibit H to the Napolitano Affidavit is a true and correct copy of plaintiff's W-2 for 2006.

48. The plaintiff never received a paycheck or W-2 from TSI Holdings, or from defendant TSI. Napolitano Affid. ¶ 6.

49. Highpoint employed more than 100 employees throughout the period 2000 to 2006. Napolitano Affid. ¶ 34.

50. At least one of the persons employed by Highpoint during the period from the end of 2003 to the present is a participant in the Town Sports International Holdings, Inc. 2004 Common Stock Option Plan. Napolitano Affid. ¶ 34.

51. A copy of the Town Sports International Holdings, Inc. 2004 Common Stock Option Plan is attached to the Napolitano Affidavit as Exhibit G.

52. The plaintiff is now a "Participant" in the Town Sports International Holdings, Inc. 2004 Common Stock Option Plan, under options issued to him pursuant to a Common Stock Option Agreement dated September 12, 2006; a copy of that option agreement is attached as Exhibit F to the Napolitano Affidavit.

53. Mark Smith, former CEO of TSI Holdings, is, according to the defendants' filings with the Securities and Exchange Commission, the holder of unexercised options under the Town Sports International Holdings, Inc. 2004

Common Stock Option Plan, and he is not an employee of TSI Holdings or TSI. Napolitano Affid. ¶ 27.

54. Mark Smith was an executive of TSI Holdings. Napolitano Affid. ¶ 27.

55. A copy of a "2003 Common Stock Option Agreement" to which plaintiff and TSI were parties is attached to the Napolitano Affidavit as Exhibit D.

56. The Stock Option Agreement dated September 12, 2006, described hereinabove, a copy of which is attached as Exhibit F to the Napolitano Affidavit, is subject to the Town Sports International Holdings, Inc. 2004 Common Stock Option Plan, and provides that the options granted thereunder will expire on June 1, 2010.

57. On occasion, an employee of one company within the TSI Holdings "affiliated corporate group" (defined, for purposes of this Statement, as those companies whose accounting is consolidated with that of TSI Holdings) leaves employment with one company in the affiliated corporate group and immediately becomes employed by another company in the affiliated corporate group. Napolitano Affid. ¶ 34.

58. During his employment with Highpoint, plaintiff was subject to a covenant not to compete with TSI Holdings. Napolitano Affid. ¶ 30.

59. The plaintiff is bound, as of the date hereof, by a covenant not to

compete with TSI Holdings, and is contractually obliged to provide consulting services to TSI Holdings through June 30, 2007. Napolitano Affid. ¶ 30.

60. The plaintiff worked with the defendants' former CEO, Mark Smith, and its current CEO, Robert Giardina, to evaluate and develop new lines of business, some of which would have been pursued, if at all, as joint ventures with companies outside the corporate group. Napolitano Affid. ¶ 31.

61. The plaintiff served as President of the International Health, Racquet and Sports Clubs Association before he joined the defendants' corporate group. Napolitano Affid. ¶ 32.

62. The plaintiff expressed to Mark Smith a desire to return to operations. Napolitano Affid. ¶ 32.

63. Mark Smith advised the plaintiff, before 2004, that if a joint venture were formed with persons outside the TSI Holdings corporate group, the plaintiff would be considered to manage any venture that plaintiff had helped conceive. Napolitano Affid. ¶ 32.

64. At the time the First Option and the Second Option were prepared and executed, there were no discussions between the plaintiff and any representative of TSI Holdings concerning the presence of a 90-day expiration clause in either agreement. Napolitano Affid. ¶ 33.

Respectfully submitted,

_____
Richard G. Tuttle
Archer & Greiner, P.C
Suite 1620
One South Broad Street
Philadelphia, PA  19107
(215) 963-3300
rtuttle@archerlaw.com

Counsel for Plaintiff
Frank J. Napolitano, Jr.

April 24, 2007