## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANK J. NAPOLITANO, JR.  :  CIVIL ACTION
           :
    Plaintiff,    :  NO. 07-CV-755
           :
    vs.       :
           :
TOWN SPORTS INTERNATIONAL :
HOLDINGS INC. and TOWN SPORTS :
INTERNATIONAL, INC.    :
           :
    Defendants.   :

## AFFIDAVIT OF PLAINTIFF FRANK J. NAPOLITANO, JR.

Plaintiff Frank J. Napolitano, Jr., deposes and says:

1. I am an adult resident and citizen of Pennsylvania.

2. I was employed by TSI Highpoint, LLC ("Highpoint") from January, 2000 to June, 2006. My Form W-2 issued to me by Highpoint for 2006 is attached as Exhibit H to my initial affidavit in this case, submitted in support of my motion for summary judgment. My W-2's from Highpoint, issued from New York, showed my Pennsylvania residence and the withholding of Pennsylvania state income tax.

3. During the more than six years that I worked for Highpoint, I spent approximately 70% of my work time at Highpoint and 20% at the offices of its corporate parents in New York City.

4. Before joining Highpoint, I was a principal owner and manager of Highpoint Athletic Club (HAC). My business partner and I sold HAC to Highpoint effective January 1, 2000. My employment with Highpoint began shortly after that transaction. Highpoint was formed as a subsidiary of defendant

Town Sports International, Inc. ("TSI").

5. Mark Smith was Chief Executive Officer of TSI when Highpoint purchased HAC, and he negotiated the purchase agreement with me.

6. The reason that Mr. Smith and I agreed that I would work at Highpoint, in Pennsylvania, was that my duties, to a significant extent, were to design and create programs for family and children, for which the Highpoint club (uniquely among the defendants' many properties) was ideally suited. Highpoint was used as a laboratory for those programs.

7. When an executive of defendant Town Sports International Holdings, Inc. ("TSI Holdings") provides notice to the company that he or she is exercising stock options, the company first performs a federal tax withholding calculation and provides the executive with an amount owed in federal, state or local tax withholding.

8. I was a Pennsylvania resident, and worked primarily in Pennsylvania, for the entire period from the execution of the stock option agreements at issue in this case to the present. TSI Holdings was aware of that fact because it owned Highpoint (directly or remotely) and dealt with me through its executive officers. Mark Smith, Robert Giardina, and Richard Pyle were executive officers of TSI Holdings and Highpoint. My residence and place of work in Pennsylvania were well known to senior management of TSI Holdings when the stock option agreements at issue in this case were executed in February, 2004 (those agreements are attached as Exhibits A and C to the complaint, and are referred to hereafter as the "Stock Option Agreements").

9. The Stock Option Agreements were form documents, and not negotiated as to terms. To the extent that I had discussions with Mark Smith about the options in the form initially issued by TSI in 2000 and 2003, those discussions occurred by telephone and in person, and both in Pennsylvania and New York.

10. Mark Smith, former CEO of TSI Holdings, visited me in Pennsylvania before and after execution of the Stock Option Agreements in 2004, and those visits involved discussions of TSI Holdings' plans and strategies for future operations, including the operations of its subsidiaries in Pennsylvania.

11. TSI Holdings entered into a stock option agreement with at least one other Pennsylvania resident who, like me, worked for Highpoint. Upon

information and belief, that person worked for Highpoint throughout the period from February 4, 2004 (the date on which the options were granted), through the present. That person has always worked primarily at Highpoint, and she did so, during my tenure, at the demand of Highpoint and TSI Holdings. She was not working at Highpoint for her own convenience.

12.  In 2006, TSI Holdings, at or about the time of its initial public offering of common stock, promoted a stock purchase plan for employees of subsidiaries in Pennsylvania (among other states), and promoted those purchases here.

13.  At the request of my counsel, I have evaluated the relationship of TSI Holdings and its subsidiaries in Pennsylvania (those subsidiaries operate sports clubs) in light of the following ten factors: (1) ownership of all or most of the stock of the subsidiary; (2) common officers and directors; (3) a common marketing image; (4) common use of a trademark or logo; (5) common use of employees; (6) an integrated sales system; (7) interchange of managerial and supervisory personnel; (8) performance of business functions by the subsidiary which the principal corporation would normally conduct through its own agents or departments; (9) marketing by the subsidiary on behalf of the principal corporation, or as the principal's exclusive distributor; and (10) receipt by the officers of the subsidiary corporation of instruction from the principal corporation. Of those ten factors, all apply to TSI Holdings' operation of its Pennsylvania subsidiaries.

14.  The accounting for all of TSI Holdings' subsidiaries is consolidated; employment policies and other business practices are highly standardized throughout the corporate group; and all of the companies operate under similar names and logos. TSI Holdings directs a substantial amount of business in Pennsylvania, through seven "Philadelphia Sports Clubs," including Highpoint.

I verify, under penalty of perjury, that the foregoing is true and correct.

Executed on April 24, 2006.


Frank J. Napolitano, Jr.