# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
-----------------------------------------------------------X
FRANK J. NAPOLITANO, JR.                      :
                                              :
                Plaintiff,                    :
                                              :        Civil Action No. 07-0755
    -vs.-                                     :
                                              :
TOWN SPORTS INTERNATIONAL                     :
HOLDINGS, INC. and TOWN SPORTS               :
INTERNATIONAL, INC.,                          :
                                              :
                Defendants.                   :
-----------------------------------------------------------X
```

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6), RULE 12(b)(2) AND RULE 12(b)(3) AND TO CHANGE VENUE PURSUANT TO RULE 12(b)(3) AND 28 U.S.C. §§ 1404 AND 1406

Brian T. Feeney
Bryan L. Norton (BLN5927)
GREENBERG TRAURIG, LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: 215.988.7800
Facsimile: 215.988.7801

Of Counsel:

Jordan Stern, Esquire
Jesse T. Conan, Esquire
BECKER, GLYNN, MELAMED & MUFFLY, LLP
299 Park Avenue
New York, New York 10171
Telephone: 212.888.3033

*Attorneys for Defendants*

# Table of Contents

**PRELIMINARY STATEMENT** ................................................................ 2

**INTRODUCTION** .............................................................................. 2

**FACTS** ........................................................................................... 3

Corporate Structure and Contacts With Pennsylvania ................................ 3

The Stock Option Agreements ............................................................... 4

The Purported Option Exercise and the Complaint ................................... 5

**ARGUMENT** .................................................................................... 7

   I.   THE COMPLAINT SHOULD BE DISMISSED:  PLAINTIFF
        FAILS TO STATE A CLAIM, FOR HE CANNOT ALLEGE
        THAT HE PROPERY PERFORMED UNDER THE OPTION
        AGREEMENTS ............................................................................. 7

   II.  DEFENDANT INTERNATIONAL IS NOT A PROPER PARTY
        TO THIS LITIGATION AND SHOULD BE DISMISSED FROM
        THE CASE:  PLAINTIFF FAILS TO ALLEGE A BREACH OF
        CONTRACT AS TO INTERNATIONAL ............................................. 9

   III. THIS COURT LACKS PERSONAL JURISDICTION OVER
        HOLDINGS ................................................................................ 11

      A.  The Law of Personal Jurisdiction ........................................... 11

      B.  Holdings's Contacts with the Forum Are Not Continuous and
          Systematic such that It Is Subject to General Personal
          Jurisdiction in Pennsylvania ................................................... 13

      C.  Holdings Does Not Have the Minimum Contacts with
          Pennsylvania Necessary to Sustain the Application of Specific
          Personal Jurisdiction ............................................................. 14

   IV.  VENUE IS IMPROPER ............................................................... 18

   V.  ALTERNATIVELY, THIS COURT SHOULD TRANSFER THE
        ACTION TO THE SOUTHERN DISTRICT OF NEW YORK ............... 20

**CONCLUSION** ............................................................................... 25

## Table of Authorities

**Cases**

*Abramoff v. Shake Consulting, LLC,*
   288 F. Supp. 2d 1 (D.D.C. 2003)..................................................................... 20

*Advanced Mktg. Group, Inc. v. Business Payment Systems, LLC,*
   No. 05-9121, 2007 U.S. Dist. LEXIS 25838 (S.D.N.Y.)........................................ 7, 9

*Bezuszka v. L.A. Models,*
   No. 04-7703, 2006 WL 770526 (S.D.N.Y.) ........................................................ 10

*BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.,*
   229 F.3d 254 (3d Cir. 2000) ......................................................................... 12

*Brooks v. Bacardi Rum Corp.,*
   943 F. Supp. 559 (E.D. Pa. 1996)................................................................... 12

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462, 105 S. Ct. 2174 (1985)............................................................. 14, 15

*Canine v. Liberty Mutual Ins.,*
   No. 06-317, 2006 U.S. Dist. LEXIS 11073 (N.D. Cal.) ....................................... 9, 10

*Dave Guardala Mouthpieces, Inc. v. Sugal Mouthpieces, Inc.,*
   779 F. Supp. 335 (S.D.N.Y. 1991) .................................................................. 19

*Donelly v. Klosters Rederi,*
   515 F. Supp. 5 (E.D. Pa. 1981) ...................................................................... 23

*Donohue v. Team Rensi Motors, LLC,*
   No. 01-5564, 2002 U.S. Dist. LEXIS 20312 (E.D. Pa.) ............................... 15, 16, 17

*Doran v. Credit Bureau Assocs.,*
   No. 99-2470, 2000 U.S. Dist. LEXIS 3093 (E.D. Pa.) .......................................... 19

*Echols v. Pelullo,*
   377 F.3d 272 (3d Cir. 2004) ........................................................................... 7

*Elliot v. Armor Holdings, Inc.,*
   No. 99-337-B, 2000 U.S. Dist. LEXIS 1071 (D.N.H.)............................................ 17

*Feldman v. The Pub of New Jersey,*
   No. 94-1660, 1994 U.S. Dist. Lexis 9428 (E.D. Pa. 1994).................................... 23

ii

*Fidelity Leasing, Inc. v. Limestone County Board of Education,*
   2000 PA Super 244, 758 A.2d 1207 (Pa. Sup. 2000) ............................................... 15

*Fidelity Leasing, Inc. v. Metavec Corp.,*
   No. 98-6035, 1999 U.S. Dist. LEXIS 6737 (E.D. Pa.) ............................................ 22

*Gehling v. St. George's School of Med., Ltd.,*
   773 F.2d 539 (3d Cir. 1985) ....................................................................................... 24

*Gen. Elec. Co. v. Deutz AG,*
   270 F.3d 144 (3d Cir. 2001) .......................................................................... 11, 12, 14

*Harsco Corp. v. Segui,*
   91 F.3d 337 (2d Cir. 1996) ........................................................................................... 7

*Heighley v. J.C. Penney Life Ins. Co.,*
   257 F. Supp. 2d 1241 (C.D. Cal. 2003) ................................................................. 9, 10

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
   466 U.S. 408, 104 S. Ct. 1868 (1984) ................................................................. 12, 13

*Hoffman v. Tyco Int'l, Ltd.,*
   No. 06-2961, 2006 U.S. Dist. LEXIS 91392 (E.D. Pa.) ...................................... 11, 12

*Jumara v. State Farm Ins. Co.,*
   55 F.3d 873 (3d Cir. 1995) ......................................................................................... 21

*Kahhan v. City of Fort Lauderdale,*
   566 F. Supp. 736 (E.D. Pa. 1983) .............................................................................. 23

*Kulko v. Superior Court of California,*
   436 U.S. 84, 98 S. Ct. 1690 (1978) ............................................................................ 14

*Lampe v Xouth, Inc.,*
   No. 90-4067, 1991 U.S. Dist. LEXIS 2450 (E.D. Pa.) ................................................ 8

*Mellon Bank (East) PSFS, Nat'l Assoc. v. Farino,*
   960 F.2d 1217 (3d Cir. 1992) ..................................................................................... 11

*Miller Yacht Sales, Inc. v. Smith,*
   384 F.3d 93 (3d Cir. 2006) .......................................................................................... 11

*Nordic Bank PLC v. Trend Group, Ltd.,*
   619 F. Supp. 542 (S.D.N.Y. 1985) ............................................................................... 9

*Pennebacker v. Wayfarer Ketch Corp.,*
   777 F. Supp. 1217 (E.D. Pa. 1991) ............................................................................ 16

*Pennzoil Prods. Co. v. Colelli & Assocs., Inc.,*
    149 F.3d 197 (3d Cir. 1998) ................................................................. 12

*Pulse Techs., Inc. v. Dodrill,*
    No. 06-4549, 2006 U.S. Dist. LEXIS 88888 (E.D. Pa.) ..................... 18, 20

*R.H. Damon & Co. v. Softkey Software Products, Inc.,*
    811 F. Supp. 986 (S.D.N.Y. 1993) ............................................................ 8

*Rapp v. Walt Disney Co.,*
    No. 98-3478, 1998 U.S. Dist. LEXIS 13793 (E.D. Pa.) ......................... 13

*Schiller-Pfeiffer, Inc. v. Country Home Products, Inc.,*
    No. 04-1444, 2004 U.S. Dist. LEXIS 24180 (E.D. Pa.) ......................... 21

*Scorpio Music, Inc. v. MCA Corp.,*
    No. 86-1591, 1986 U.S. Dist. LEXIS 23576 (E.D. Pa.) ..................... 22, 23

*The Budd Co. v. Mass Transit Admin.,*
    No. 85-5940, 1986 U.S. Dist. LEXIS 29348 (1986) ....................... passim

*Time Share Vacation Club v. Atlantic Resorts, Ltd.,*
    735 F.2d 61 (3d Cir. 1984) ................................................................. passim

*TJF Assocs. v. Kenneth J. Rotman & Allianex, LLC,*
    No. 05-705, 2005 U.S. Dist. LEXIS 11943 (E.D. Pa.) ........................... 19

*United States v. Berkowitz,*
    328 F.2d 358 (3d Cir. 1964) ..................................................................... 24

*Utilitech, Inc. v. Somerset Med. Ctr.,*
    No. 06-1232, 2006 U.S. Dist. LEXIS 40126 (E.D. Pa.) ......................... 13

*Wallace v. Mercantile County Bank,*
    No. 06-3974, 2006 U.S. Dist. LEXIS 82565 (E.D. Pa.) ......................... 21

*World-Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286, 100 S. Ct. 559 (1990) ...................................................... 13

**Statutes**

28 U.S.C. § 1391(a) ................................................................................... 18

28 U.S.C. § 1391(a)(1) .............................................................................. 20

28 U.S.C. § 1391(a)(2) .............................................................................. 18

28 U.S.C. § 1391(c) ................................................................................... 18

28 U.S.C. § 1404 ................................................................................................ 1

28 U.S.C. § 1404(a) .......................................................................................... 20

28 U.S.C. § 1406 ................................................................................................ 1

28 U.S.C. § 1406(a) .......................................................................................... 20

42 PA CON. STAT. ANN. § 5322 .................................................................. 12, 15

42 PA. CONS. STAT. ANN. § 5301(b) ............................................................. 11

FED. R. CIV. P. 12(b)(2) ..................................................................................... 2

FED. R. CIV. P. 12(b)(3) ................................................................................ 2, 20

FED. R. CIV. P. 12(b)(6) ............................................................................ 2, 6, 10

## PRELIMINARY STATEMENT

Defendants Town Sports International Holdings, Inc. ("Holdings") and Town Sports International, LLC ("International") submit this memorandum of law in support of their motion to dismiss or alternatively, to change venue.[1]  This motion seeks **(1)** to dismiss this action with prejudice because plaintiff does not, and cannot, plead the elements of a breach of contract claim (FED. R. CIV. P. 12(b)(6)), **(2)** to dismiss International from this action because it is not a proper party (FED. R. CIV. P. 12(b)(6)) and **(3)** to dismiss Holdings from this action for lack of personal jurisdiction (FED. R. CIV. P. 12(b)(2)).  This motion also seeks **(4)** to dismiss this action for improper venue (FED. R. CIV. P. 12(b)(3)) or, in the alternative, **(5)** to change venue to the U.S. District Court for the Southern District of New York, where venue is proper and personal jurisdiction is not in question (FED. R. CIV. P. 12(b)(3); 28 U.S.C. §§ 1404 and 1406).

## INTRODUCTION

Plaintiff's complaint arises from an alleged breach of two stock option agreements entered into among plaintiff, Holdings and Town Sports International, Inc. ("International Inc.")  Both agreements granted plaintiff options to purchase Holdings stock.  The Complaint alleges that plaintiff gave timely notice to exercise his options, but fails to allege delivery of the required payment for those shares "in cash by certified check or official bank check" as the option agreements specifies.  Holdings disputes that plaintiff exercised his options in a timely, proper manner, and has not issued stock.  Plaintiff has brought this action seeking specific performance of the agreements (Count I) and damages (Count II) from both Holdings and International.

---

[1]      As a result of a June 30, 2006 corporate restructuring, the company formerly known as Town Sports International, Inc., is now Town Sports International, LLC.   Declaration of Richard Pyle, Chief Financial Officer and Executive Vice President of Holdings, dated April 11, 2007 ("*Pyle Decl.*") ¶ 3 at Exhibit 1.

In Point I, below, we contend that the case should be dismissed for failure to state a claim because plaintiff cannot plead that he has performed his obligation to tender payment under the terms of the option agreements, a required element of a breach of contract claim in New York. In Point II, we argue that International should be dismissed from the case. Though as a formality International (as successor to International Inc.) is a party to the stock option agreements, plaintiff does not assert a claim against it. Indeed, International does not have a single obligation to perform under the stock option agreements. In Point III, we show that Holdings is not subject to either general or specific personal jurisdiction in Pennsylvania as it has no contacts with the forum and should be dismissed from the case. In Point IV, we contend that venue is improper in the Eastern District of Pennsylvania as not all defendants "reside" in the forum and all of the substantial "events or omissions" giving rise to the claim occurred in New York.

Finally, as an alternative, in Point V, we argue that if not dismissed, the case should be transferred to the U.S. District Court for the Southern District of New York as it is the proper venue for the litigation and none of the venue and personal jurisdiction issues that must be resolved for the case to continue in Pennsylvania need be considered were the case transferred.

## **FACTS**

### Corporate Structure and Contacts With Pennsylvania

Holdings is a publicly-traded corporation, organized under the laws of Delaware. (*Pyle Decl.* ¶ 2.) Through its operating subsidiaries, Holdings owns and operates fitness centers in the Northeast and Mid-Atlantic regions of the United States. (*Id.*) Holdings's corporate offices are in New York, at 888 Seventh Avenue in New York City, and its principal place of business is New York, (*id.*), as the Complaint readily concedes (Compl. ¶ 2). Holdings has no presence in the Commonwealth of Pennsylvania: it is not authorized, licensed or registered to do business in

3

Pennsylvania, does not own real property in Pennsylvania, maintains no offices in Pennsylvania, leases no property in Pennsylvania, and has no business in Pennsylvania. (*Pyle Decl.* ¶ 2.)

Holdings has no employees other than its unpaid corporate officers, all of whom work out of New York, and operates principally as the publicly-traded parent of International. (*Id.* ¶ 3.) Plaintiff was an employee of International Inc., a New York corporation with its corporate headquarters in New York. (*Id.* ¶ 4.) Though the corporate offices of International Inc. were in New York (and the corporate offices of International are in New York), out of convenience to plaintiff, he was allowed to split his time between International Inc.'s New York office and an office located at the fitness center at 1 Highpoint Drive, Chalfont, PA ("Highpoint Club"), owned and operated by a subsidiary, TSI Highpoint, LLC. (*Id.*)

Plaintiff alleges that he was an employee of the Highpoint Club, and worked out of Pennsylvania. (Compl. ¶ 8.) This is incorrect. Though plaintiff spent between 20-50% of his time working out of the office space at the Highpoint Club, at no point was plaintiff ever an employee of TSI Highpoint, LLC. (*Pyle Decl.* ¶ 5.) Plaintiff also was never an employee of Holdings. (*Id.*)

<u>The Stock Option Agreements</u>

In a corporate restructuring in February 2004, Holdings was formed to issue certain publicly-traded debt securities and to serve as the publicly-traded parent company of International Inc. (and now International) and its subsidiaries. (*Id.* ¶ 6.) At that time, all stockholders of International Inc. exchanged their stock for an equivalent equity ownership interest in Holdings. (*Id.* ¶ 7.) Holders of options in International Inc. similarly exchanged those options for options in Holdings. (*Id.*) Accordingly, new 2000 and 2003 Common Stock Option Agreements (options in Holdings) were issued to holders of options under the original 2000 and

4

2003 option agreements (options in International Inc.). (*Id.*) Plaintiff, as a holder of options under the original 2000 and 2003 agreements, was issued new 2000 and 2003 options (collectively referred to as the "New 2000 and 2003 Option Agreements") in February 2004. (*Id.; Compl. Ex. B* (2004 memorandum to plaintiff explaining the reorganization and issuance of the New 2000 and 2003 Option Agreements).) It is the New 2000 and 2003 Option Agreements that are at issue in this litigation. (*See* Compl. Ex. A & Ex. C (New 2000 and 2003 Option Agreements).)

Though International Inc. is a signatory to the New 2000 and 2003 Option Agreements, it has no rights or obligations under them. (*Pyle Decl.* ¶ 8.) The agreements call for Holdings (not International Inc. or International) to issue its stock upon plaintiff's timely and proper exercise of his rights. (*Id.*) As Holdings must issue stock under the New 2000 and 2003 Option Agreements, any breach of contract claim arising out of Holdings's failure to do so must lie against Holdings (as a wholly owned subsidiary of Holdings, International, successor to International Inc., is incapable of issuing the stock of its parent). (*Id.*)

### The Purported Option Exercise and the Complaint

Plaintiff claims that he timely exercised his options and fully performed the services required of him under the New 2000 and 2003 Option Agreements. (Compl. ¶ 34.) He alleges that he "notified defendants of his exercise of the [New 2000 and 2003 Option Agreements] on or before June 21, 2006 . . . and defendant had actual and constructive notice of plaintiff's intent to exercise both options." (Compl. ¶ 30.) Despite his contractual obligation to deliver payment in "cash by a certified or official bank check," payable to Holdings, (Compl. Ex. A § 2(c) & Ex. C §2(c)), Plaintiff claims to have exercised his options by dropping an uncertified personal check and cover letter purporting to exercise options on the desk of Robert Herbst, Holdings's General

Counsel, in New York on or before June 21, 2006. (*Pyle Decl.* ¶ 9.) That check was post-dated to September 5, 2006. (*Id.*) Neither Holdings, International Inc., nor International has a record of receipt of this letter or personal check. (*Id.*)

In late October, plaintiff inquired about the state of his options, and, evidently, upon learning that Holdings had no record of receiving his letter and check, sent Mr. Herbst an email on November 1. (*Id.* ¶ 10, Ex. A (email with attachments).) The email explains the circumstances of his purported exercise. Plaintiff attached to his email a copy of his June 20 exercise letter and an uncertified personal check. (*Id.*)

Plaintiff commenced this suit after Holdings declined to issue stock. All the events leading up to the formation and alleged breach of the New 2000 and 2003 Option Agreements occurred in New York. (*Id.* ¶ 11.) The New 2000 and 2003 Option Agreements were negotiated in New York and signed by Holdings and International Inc. in New York. (*Id.*) Plaintiff's purported performance—hand delivery of his exercise letter and check—occurred in New York. (*Id.*) Holdings's decision not to issue stock to plaintiff was made in New York. (*Id.*) All likely witnesses except plaintiff work in New York and reside in the New York metropolitan area. (*Id.*) Lastly, all of defendants' files and documentary evidence relating to the stock options agreements are located in New York. (*Id.*)

In Count I, plaintiff seeks specific performance from Holdings and International, requesting an order from the court "requiring defendants to accept plaintiff's exercise of rights to purchase" 58,240 shares of Holdings. (Compl. ¶ 9.) In what seems to be a prayer for alternative relief, in Count II, plaintiff seeks damages in the amount of $888,333.60 from Holdings and International.

## ARGUMENT

**I.    THE COMPLAINT SHOULD BE DISMISSED: PLAINTIFF FAILS TO STATE A
        CLAIM, FOR HE CANNOT ALLEGE THAT HE PROPERLY PERFORMED
        UNDER THE OPTION AGREEMENTS.**

The Complaint fails to allege that plaintiff has satisfied his own performance obligation

under the New 2000 and 2003 Option Agreements to provide payment for his shares by certified

check or official bank check at the time that notice of exercise was purportedly given. As

performance of the contract is a required element of a breach of contract claim, plaintiff has

failed to state a claim under FED. R. CIV. P. 12(b)(6), and the Complaint must be dismissed with

prejudice.

As a preliminary matter, the Court must determine whether New York or Pennsylvania

law governs plaintiff's breach of contract claim. A choice of law clause in the New 2000 and

2003 Option Agreements selects New York law. (Compl. Ex. A § 10(k) & Ex. C § 10(k).) As

"Pennsylvania courts generally enforce choice-of-law provisions in contracts," New York law

governs plaintiff's claims. *Echols v. Pelullo*, 377 F.3d 272, 275 (3d Cir. 2004) (enforcing

Delaware choice-of-law clause in an agreement).

To assert a breach of contract claim under New York law, a complaint must allege "(1)

the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3)

breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348

(2d Cir. 1996). Courts in New York regularly dismiss breach of contract claims where plaintiff's

alleged performance does not or cannot comply with the terms of the agreement. *See e.g.*

*Advanced Mktg. Group, Inc. v. Business Payment Sys., LLC*, No. 05-9121, 2007 U.S. Dist.

LEXIS 25838 (S.D.N.Y. March 30, 2007) (dismissing complaint where plaintiff was required to

provide defendant with 100 new accounts per month under an agreement but only managed to

7

provide 92; plaintiff failed to allege a breach of contact claim against defendant as plaintiff "did not comply with the agreement and therefore did not sufficiently plead the element of adequate performance required to state a claim for breach of contract"); *R.H. Damon & Co. v. Softkey Software Prods., Inc.*, 811 F. Supp. 986, 991 (S.D.N.Y. 1993) (dismissing claims on plaintiff's failure to allege that its performance satisfied the terms of an option agreement—performance of services). Pennsylvania law is to the same effect. *See Lampe v. Xouth, Inc.*, No. 90-4067, 1991 U.S. Dist. LEXIS 2450, at *14-15 (E.D. Pa. Feb. 27, 1991) (dismissing breach of contract claim where plaintiff failed to allege his own compliance with the terms of the agreement at issue).

Plaintiff's only allegation concerning his performance is that "Plaintiff has fully performed the services required of him under the [New 2000 and 2003 Option Agreements], and has tendered to the defendants the full amount of the purchase price of shares subject to said options." (Compl. ¶ 34.) But the agreements (annexed to the complaint) require that his notice to exercise his stock options be accompanied by payment "in cash by a certified or official bank check, payable to the Company (or the equivalent thereof acceptable to the [board or compensation] committee)." (Compl. Ex. A § 2(c)-(d) & Ex. C § 2(c)-(d).) Plaintiff has not pled that his tender of payment conformed with this obligation.

Nor can plaintiff do so. By his own admission, plaintiff did not tender payment in the form of a certified or official bank check—as required by the agreements—but rather, with an uncertified personal check. (*Pyle Decl.* Ex. A.) That check, which was allegedly dropped on the desk of General Counsel "on or before" June 21, 2006, was admittedly plaintiff's personal check post-dated to September 5, 2006: "I have made the check out to TSI for that amount [$325,000] and dated it September 5, 2006." (*Id.*) As plaintiff's tender of payment did not comply with the terms of the agreements, he does not (and cannot) adequately plead his own performance and the

case should be dismissed with prejudice. *See Advanced Mktg.*, 2007 U.S. Dist. LEXIS 25838, at *9-10.

## II.    DEFENDANT INTERNATIONAL IS NOT A PROPER PARTY TO THIS LITIGATION AND SHOULD BE DISMISSED FROM THE CASE: PLAINTIFF FAILS TO ALLEGE A BREACH OF CONTRACT AS TO INTERNATIONAL.

Plaintiff does not allege that International has any affirmative obligations under the New 2000 and 2003 Option Agreements and has not alleged that International breached the agreements, thus, International should be dismissed from the case.

As noted above, the New 2000 and 2003 Option Agreements are governed by New York law. Since plaintiff has not, and cannot, allege facts that demonstrate that International, specifically, breached the option agreements, International is not a proper party to this litigation and should be dismissed from the case. *See Nordic Bank PLC v. Trend Group, Ltd.*, 619 F. Supp. 542, 561-62 (S.D.N.Y. 1985) (allegation that defendant breached an option agreement by unilaterally modifying its terms is insufficient to sustain a breach of contract claim as it does not allege that the defendant caused any breach of the agreement). In two breach of contract actions in California, the court dismissed defendants where the agreements at issue—like the option agreements with respect to International—did not impose any affirmative obligations upon them. *See Canine v. Liberty Mut. Ins.*, No. 06-317, 2006 U.S. Dist. LEXIS 11073 (N.D. Cal. March 1, 2006) (because defendant is not the party that agreed to provide disability benefits to plaintiff, "it cannot be held liable for breach of a contract to provide those benefits to her"); *Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp.2d 1241, 1251 (C.D. Cal. 2003) (where defendant group policyholder was issued policy that covered all its cardholders but had no role in the denial of

benefits to its cardholders and complaint makes no direct allegation of wrongdoing against the group policyholder, group policyholder is an improper defendant and must be dismissed).[2]

The option agreements grant plaintiff the right to exercise stock options in Holdings, not in International: "[s]ubject to the Executive executing and delivering to the Company the Stockholders Agreement and the Executive Stock Agreement, the Company hereby grants to Executive . . . an option to purchase up to 6,600 shares of the Company's Class A Common . . ." (Compl. Ex. A § 2(a); Ex. C § 2(a) (using identical language for an option "to purchase up to" X number of shares).) Both agreements define the Company exclusively as Holdings. *Id.* Ex. A; Ex. C. Moreover, to exercise his options, plaintiff was required to file "written notice of exercise to the Company," accompanied by a payment "made in cash by a certified or official bank check payable to the Company." (*Id.* Ex. A § 2(c)-(d); Ex. C § 2(c)-(d).) International has no obligation towards either Holdings or plaintiff with regard to the exercise of plaintiff's stock options. It was neither capable of, nor the party obligated to, issue shares of Holdings to plaintiff under the New 2000 and 2003 Option Agreements.

Plaintiff is keenly aware of this fact. In the critical paragraph of the Complaint, he alleges that "[d]efendant TSI Holdings continues to refuse to sell shares of TSI Holdings to plaintiff under the terms of the [New 2000 and 2003 Option Agreements]." (Compl. ¶ 37.) Absent from the complaint is any allegation that International could have performed under the option agreement. As the option agreements do not contemplate any role for International regarding the exercise of plaintiff's options, the dispute does not involve International. *See Canine*, 2006 U.S. Dist. LEXIS 11073, at *12; *Heighley*, 257 F. Supp. 2d at 1251. The breach of

---

[2]    The elements of a breach of contract claim are "identical" under New York and California law. *Bezuszka v. L.A. Models*, No. 04-7703, 2006 WL770526, at *8 (S.D.N.Y. March 24, 2006).

contract claim is the exclusive providence of Holdings and plaintiff, and International should be dismissed from the case as an improper party under FED. R. CIV. P. 12(b)(6) for failure to state a claim.

## III.    THIS COURT LACKS PERSONAL JURISDICTION OVER HOLDINGS.

Plaintiff makes two jurisdictional allegations. First, he pleads that that the defendants are subject to general jurisdiction in the Commonwealth of Pennsylvania because they "conduct business in Pennsylvania on a continuous basis [and] are present in Pennsylvania for all purposes." (Compl. ¶ 6.) Second, he asserts that the defendants are subject to specific jurisdiction because "[t]he events giving rise to plaintiff's cause of action, and delivery of the consideration for the contract in issue, took place" in Pennsylvania. (Compl. ¶ 7.) Plaintiff must be able to establish an independent basis for personal jurisdiction over each defendant or that defendant must be dismissed. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 (3d Cir. 2006).

As we show below, Holdings is not subject to general or specific personal jurisdiction in Pennsylvania and must be dismissed from the case.

### A.    The Law of Personal Jurisdiction

A federal district court sitting in diversity may exercise personal jurisdiction over a non-resident defendant to the extent permitted by the laws of the forum state. *Hoffman v. Tyco Int'l, Ltd.*, No. 06-2961, 2006 U.S. Dist. LEXIS 91392, at *2-3 (E.D. Pa. Dec. 19, 2006) (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61 (3d Cir. 1984)). If jurisdiction is challenged, the burden rests upon the plaintiff to establish personal jurisdiction. *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). To defeat a motion to dismiss for lack of personal jurisdiction, the plaintiff must come "forward with a set of facts sufficient to create a

prima facie case of jurisdiction." *Brooks v. Bacardi Rum Corp.*, 943 F. Supp. 559, 561 (E.D. Pa. 1996) citing *Mellon Bank (East) PSFS, Nat'l Assoc. v. Farino*, 960 F.2d 1217 (3d Cir. 1992).

There are two kinds of personal jurisdiction: general and specific. "A defendant is subject to general jurisdiction when it has continuous and systematic contacts with the forum state." *General Elec. Co. v. Deutz*, 270 F.3d at 150. *See also Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998) ("[a] nonresident's contacts with the forum must be 'continuous and substantial' to establish general jurisdiction"). When jurisdiction over a defendant is based upon general jurisdiction, "any cause of action may be asserted against him." 42 PA. CONS. STAT. ANN. § 5301(b). *See also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ("[e]ven when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its *in personam* jurisdiction when there are sufficient contacts between the State and the foreign corporation") (emphasis in original).

On the other hand, "[s]pecific jurisdiction is established when a non-resident defendant has purposefully directed his activities at a resident of the forum and injury arises from or is related to those activities." *General Elec. Co.*, 270 F.3d at 150. Pennsylvania's long-arm statute, 42 PA. CON. STAT. ANN. § 5322, "permits a court to assert jurisdiction over a non-resident 'to the fullest extent allowed under the constitution of the United States.'" *Hoffman*, 2006 U.S. Dist. LEXIS 91392, at *3.

Where neither type of contacts can be established, due process precludes the exercise of jurisdiction over the non-resident defendant. *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 262 (3d Cir. 2000). The due process jurisdictional inquiry effectively boils down to the simple question of whether "defendant's conduct and connection with the forum state are

such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1990).

> **B.     Holdings's Contacts with the Forum are Not Continuous and Systematic Such that It Is Subject to General Personal Jurisdiction in Pennsylvania.**

Holdings is a corporation organized under the laws of Delaware with its principal place of business in New York. (*Pyle Decl.* ¶ 2; Compl. ¶ 2.) The company has no business in Pennsylvania, maintains no offices in Pennsylvania, and no employees work in Pennsylvania. (*Id.*) Holdings solely operates as the publicly traded parent of International. (*Pyle Decl.* ¶ 3.) As Holdings has no presence and no "continuous and systematic" contacts with Pennsylvania, it is not subject to the general jurisdiction of Pennsylvania's courts. *See generally Helicopteros*, 466 U.S. at 415-16; *Utilitech, Inc. v. Somerset Med. Ctr.*, No. 06-1232, 2006 U.S. Dist. LEXIS 40126 (E.D. Pa. June 16, 2006) (no general personal jurisdiction over defendant in Pennsylvania where corporate medical center is incorporated in New Jersey, has its principal place of business in New Jersey and operates exclusively in New Jersey, despite its close proximity to Pennsylvania); *Rapp v. Walt Disney Co.*, No. 98-3478, 1998 U.S. Dist. LEXIS 13793, at *4-5 (E.D. Pa. Sept. 3, 1998) (dismissal granted for lack of personal jurisdiction over Walt Disney Company where the defendant holding company was registered in Delaware, had its principal place of business in California and maintained no offices, employees, agents, property or bank accounts in Pennsylvania).

Since Holdings is not subject to general personal jurisdiction in Pennsylvania, we next demonstrate that specific personal jurisdiction over Holdings is similarly lacking.

C.    **Holdings Does Not Have the Minimum Contacts with Pennsylvania Necessary to Sustain the Application of Specific Personal Jurisdiction.**

Plaintiff alleges that the defendants are subject to specific jurisdiction because "[t]he events giving rise to plaintiff's cause of action, and delivery of the consideration for the contract in issue, took place" in Pennsylvania. (Compl. ¶ 7.)

Critical to the specific personal jurisdiction determination is whether the defendant "purposefully directed his activities at residents of the forum" and whether the "litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985). The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random fortuitous or attenuated contacts or of the unilateral activity of another party." *Id.* at 475. Thus, it is the purposeful acts of the defendant that must give rise to a finding of personal jurisdiction. *See Kulko v. Superior Ct. of Cal.*, 436 U.S. 84, 93-94, (1978) ("[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. It is essential in each case that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum State.").

As questions of specific jurisdiction are tied to the particular claims asserted, in contract cases courts look to "whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." *General Elec. Co.*, 270 F.3d at 150. In our case, plaintiff alleges that he "fully performed the services required of him under the [New 2000 and 2003 Option Agreements], and has tendered to the defendants the full amount of the purchase price of shares subject to said options," (Compl. ¶ 34), and that "Holdings continues to refuse to

14

sell shares of [Holdings] to plaintiff under the terms of the [New 2000 and 2003 Option Agreements]."  (Compl. ¶ 37.)

The only act of Holdings that could be construed as giving rise to specific jurisdiction in Pennsylvania connected to the option agreements is its entering into the agreements with plaintiff, an International Inc. employee who worked part of the time out of International Inc.'s office in New York, part of the time out of the Highpoint Club in Pennsylvania, and lived in Pennsylvania. (*Pyle Decl.* ¶ 4.)  But it is well settled that entering into "[a] contract with a resident from the forum state does not automatically establish sufficient minimum contacts" to confer personal jurisdiction to the forum.  *Donohue v. Team Rensi Motors, LLC*, No. 01-5564, 2002 U.S. Dist. LEXIS 20312, at *14 (E.D. Pa. Oct. 10, 2002) (citing *Burger King*, 471 U.S. at 478-79).  Under the contract-plus specific personal jurisdiction formulation of *Burger King*, more than just contracting with a resident of the forum state is necessary to establish "minimum contacts"; courts are instructed to look at the "prior negotiations," "contemplated future consequences," "terms of the contract" and "actual course of dealing" to evaluate "whether the defendant purposefully established minimum contacts with the forum."  *Burger King*, 471 U.S. at 479; *Fidelity Leasing, Inc. v. Limestone County Bd. of Educ.*, 758 A.2d 1207, 1211 (Pa. Super. Ct. 2000) (applying *Burger King* contract-plus formulation to personal jurisdiction analysis under 42 PA. CON. STAT. ANN. § 5322).

The New 2000 and 2003 Option Agreements were negotiated in New York, signed by Holdings in New York, are governed by New York law, and do not require or even contemplate plaintiff working in Pennsylvania. (*Pyle Decl.* ¶ 11.)  Moreover, plaintiff could only exercise his options under the agreements by sending notice to Holdings's offices in New York, (Compl. Ex. A § 10(i) & Ex. C § 10(i)), and Holdings's decision not to issue stock to plaintiff—the alleged

15

breach—was made in New York. (*Pyle Decl.* ¶ 11.) The fact that plaintiff worked part of the time in Pennsylvania and lived in Pennsylvania are not important factors in the contacts analysis here as they do not touch upon the acts of Holdings, none of which were directed towards the forum. *See Pennebacker v. Wayfarer Ketch Corp.*, 777 F. Supp. 1217, 1221 (E.D. Pa. 1991) ("plaintiff's decision to live in Pennsylvania while employed by defendant and receive some of his paychecks at his home address in Pennsylvania are essentially unilateral decisions on his part for his own convenience which cannot provide a basis of jurisdiction"). Plaintiff's decision to work in Pennsylvania was his own (or the decision of plaintiff and International Inc.), not the result of any decision or affirmative act of Holdings. Moreover, that plaintiff worked in Pennsylvania does not relate to the party's mutual obligations under the New 2000 and 2003 Option Agreements, the delivery of payment in exchange for stock, all of which necessarily occurred in New York.

The following three cases discuss fact-patterns which bear a striking resemblance to that before the Court. In all three cases, the court found specific personal jurisdiction lacking.

In *Donohue*, 2002 U.S. Dist. LEXIS 20312, the court found that because (i) a contract to drive defendant's race cars was, for the most part, not negotiated in Pennsylvania, (ii) performance was not required in Pennsylvania and (iii) the breach did not arise out of any of plaintiff's activities in Pennsylvania, but rather, his poor racing performance, which occurred outside of Pennsylvania, "insufficient contacts exist to base personal jurisdiction" in Pennsylvania. *Id.* at *15-22. The court also held that the payment of consideration into plaintiff's Pennsylvania bank account was irrelevant to the personal jurisdiction inquiry. *Id.* at *18.

In *Elliot v. Armor Holdings, Inc.*, No. 99-337-B, 2000 U.S. Dist. LEXIS 1071 (D.N.H.

Jan. 12, 2000), the court considered whether defendant was subject to specific jurisdiction in

New Hampshire—in the context of an alleged breach of a stock option agreement—because

plaintiff worked out of New Hampshire for the non-resident defendant for several years.[3] The

court found that it did not have personal jurisdiction over defendant because plaintiff's work in

New Hampshire did not relate to the formation or breach of the alleged agreements. Notably, the

court observed that the negotiations relating to the contract formation did not occur in New

Hampshire, plaintiff's decision to work in New Hampshire was his own—not the defendant's—

and defendant's decision not to issue stock to plaintiff (the breach) was not made in New

Hampshire. *Id.* at *18-27.

Even where plaintiff performs all his obligations under an agreement in Pennsylvania, the

defendant will not be subject to specific personal jurisdiction in Pennsylvania if the contract does

not specify or the parties contemplate performance in Pennsylvania. For example, in *Time

Share*, 735 F.2d 61, the fact that plaintiff's performance under a contract to attract customers to

purchase vacation interval time shares was predominantly in Pennsylvania did not impact

whether Pennsylvania had specific jurisdiction over the defendants. The court held that

plaintiff's actions in Pennsylvania amounted to nothing more than "unilateral activity on its part,"

insufficient to support a finding of personal jurisdiction over the non-resident defendants. *Id.* at

65. The *Time Share* court found the record devoid of any "voluntary acts by any defendant

which are sufficient to create personal jurisdiction," as no evidence before the court indicated

that the contract or the defendants contemplated performance in Pennsylvania. *Id.* at 65-66.

---

[3]        Like Pennsylvania, New Hampshire's long-arm statute is "coextensive with federal constitutional limits on jurisdiction." *Elliot*, 2000 U.S. Dist. LEXIS 1071, at *12.

Not unlike in *Donohue*, *Elliot* and *Time Share* the agreements at issue in our case do not contemplate performance in the forum and plaintiff's purported performance, delivering notice of exercise and payment to Holdings, was in New York. (Compl. Ex. A § 10(i); Ex. C § 10(i) (notice of exercise to be delivered to Holdings in New York).) Finally, the alleged breach, Holdings's decision not to issue shares of stock to plaintiff, also occurred in New York.

A final factor weighing against specific personal jurisdiction is the New York choice of law provision in the New 2000 and 2003 Option Agreements. (Compl. Ex. A § 10(k); Ex. C § 10(k).) The clause is further evidence that Holdings did not intend to avail itself of the rights and privileges of doing business in Pennsylvania and counsels further against finding that Holdings could reasonably expect to be haled into a Pennsylvania court. *See Time Share*, 735 F.2d at 65 (a choice of law provision is a factor in determining whether a defendant could foresee effects in the state).

As Holdings is not subject to personal jurisdiction in Pennsylvania, it should be dismissed from the case.

## IV.    VENUE IS IMPROPER.

Title 28 U.S.C. § 1391(a), the venue provision applicable where federal jurisdiction is founded on diversity, provides that an action can be brought in (1) a judicial district where any defendant resides, if all defendants reside in the same state, or (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. If venue cannot be established under prongs one or two, (3) an action can be brought in any district in which any defendant is subject to personal jurisdiction. *See Pulse Techs., Inc. v. Dodrill*, No. 06-4549, 2006 U.S. Dist. LEXIS 88888, at *14 (E.D. Pa. Dec. 7, 2006).

For purposes of venue, a corporation "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Thus, a determination of whether a forum is a proper venue for litigation against a corporate defendant based on the defendants' residency collapses into a determination of whether personal jurisdiction can be asserted over that corporate defendant. *See Doran v. Credit Bureau Assocs.*, No. 99-2470, 2000 U.S. Dist. LEXIS 3093, at *4 (E.D. Pa. March 17, 2000); *Dave Guardala Mouthpieces, Inc. v. Sugal Mouthpieces, Inc.*, 779 F. Supp. 335, 337 (S.D.N.Y. 1991). As we show above, there is no personal jurisdiction over Holdings in Pennsylvania, making venue in Pennsylvania under Section 1391(a)(1) improper.

Since venue does not properly lie in the forum under the residency prong, we turn to prong two—whether a "substantial part of the events or omissions giving rise to the claim" occurred in this district. 28 U.S.C. § 1391(a)(2). But as we detail above, all relevant events relating to plaintiff's breach of contract claim occurred in New York. Plaintiff purportedly exercised his options in New York and the alleged breach, Holdings's decision not to issue stock, also occurred in New York. (*Pyle Decl.* ¶ 11.) The only acts that plaintiff alleged occurred in Pennsylvania are that some of his duties as an employee of International Inc. were carried out at the Highpoint Club. These acts are unrelated to the alleged breach of contract. As all the substantial events and omissions giving rise to plaintiff's breach claim occurred in New York, a Pennsylvania venue is improper under 1391(a)(2).

In *TJF Assocs. v. Kenneth J. Rotman & Allianex, LLC*, No. 05-705, 2005 U.S. Dist. LEXIS 11943 (E.D. Pa. June 20, 2005), this court considered whether venue was proper in Pennsylvania where an agreement at issue was largely negotiated in Pennsylvania. The court found venue improper because all the events relating to breach of the agreement—allegedly

wrongful disclosures made in California—did not occur in the forum. The court distinguished between defendants' contacts with Pennsylvania, relevant to a personal jurisdiction analysis, with "the circumstances relating to the alleged breach of the [a]greement," relevant to a venue analysis under 1391(a)(2). *Id.* at *22-23. Here, like in *TJF Assocs.*, the 'acts and omissions' relating to Plaintiff's breach of contract claim—whether plaintiff timely and properly executed his stock options under the New 2000 and 2003 Option Agreements—occurred entirely in New York. Thus, venue is improper under 1391(a)(2) in Pennsylvania. *See also Abramoff v. Shake Consulting, LLC*, 288 F. Supp. 2d 1, 4-5 (D.D.C. 2003) (though contract guaranteeing various loans negotiated in forum and some of plaintiff's performance occurred in forum, the breach of the terms of the agreement—not filing a reorganization plan in accordance with the contract's terms—occurred in Florida, thus venue was improper in D.C.).

This leaves the third prong of the analysis—that venue is proper in any district where a defendant is subject to personal jurisdiction if there is no other district where the action may be brought. But since New York is a proper venue for this action, 28 U.S.C. § 1391(a)(3) is inapplicable. *Pulse Techs., Inc.*, 2006 U.S. Dist. LEXIS 88888, at *14 n.3 (venue under U.S.C. § 1391(a)(3) is improper where case could be brought in another district).

## V.    ALTERNATIVELY, THIS COURT SHOULD TRANSFER THE ACTION TO THE SOUTHERN DISTRICT OF NEW YORK.

As an alternative to dismissal of Holdings, this Court should transfer the action to the Southern District of New York pursuant to FED. R. CIV. P. 12(b)(3) and 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). (Since International is not a proper party no matter what district hears the case, it should be dismissed from the case outright).

Title 28 U.S.C. § 1404(a) provides the statutory authority for transfer and creates a two-step test to determine if a transfer is warranted: initially, the court must determine "whether

transfer is sought to a district where the action could have been brought." The court must then determine "if the convenience of the parties and witnesses and the interests of justice require transfer." *The Budd Co. v. Mass Transit Admin.*, No. 85-5940, 1986 U.S. Dist. LEXIS 29348, at *7 (E.D. Pa. Feb. 13, 1986). As a preliminary matter, the first prong of the 1404(a) transfer analysis is easily satisfied. This case "could have been brought" in the Southern District of New York because the corporate headquarters of Holdings (and International) are located there. 28 U.S.C. § 1391(a)(1).

Satisfying the second prong requires a showing that the "convenience of the parties and witnesses and the interests of justice" are served by the transfer. *The Budd Co.*, 1986 U.S. Dist. LEXIS 29348, at *7. Courts in Pennsylvania will consider a wide range of public and private interests. The private interests that may be considered include: (1) the plaintiff's forum choice; (2) defendants forum preference; (3) where the claim arose; (4) convenience to the parties; (5) convenience to the witnesses; and (6) location of books and records and other physical evidence. *Schiller-Pfeiffer, Inc. v. Country Home Prods., Inc.*, No. 04-1444, 2004 U.S. Dist. LEXIS 24180, at *30 n10 (E.D. Pa. Dec. 1, 2004) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995)). The public interests include: (1) enforceability of the judgment, (2) practical consideration that may make the trial easy, expeditious or inexpensive, (3) court congestion, (4) local interest in deciding local controversies, (5) public policy of the fora, and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

Though plaintiff's choice of forum is traditionally accorded substantial weight, where, as here, the forum "has little connection with the operative facts of the lawsuit," plaintiff's choice of forum is not accorded substantial deference *See Wallace v. Mercantile County Bank*, No. 06-3974, 2006 U.S. Dist. LEXIS 82565 (E.D. Pa. Nov. 9, 2006) (granting motion to transfer as

plaintiff's forum choice entitled to less deference where complaint rests on allegation that defendant wrongfully prosecuted lawsuit in Maryland); *Fidelity Leasing, Inc. v. Metavec Corp.*, No. 98-6035, 1999 U.S. Dist. LEXIS 6737, at *5-6 (E.D. Pa. April 29, 1999) (granting motion to transfer to Alabama as plaintiff's choice of forum accorded less weight because the operative facts of the breach of contract claim occurred in Alabama and the other interest factors favored transfer). As plaintiff's breach of contract claim arises out of events occurring entirely in New York—that is where plaintiff purportedly exercised his options and where Holdings declined to issue stock plaintiff's forum choice is accorded less weight.

Besides plaintiff's choice of forum and convenience to the plaintiff, all private factors favor New York to the extent they favor one jurisdiction over another. Again, the corporate headquarters of Holdings (and International) is in New York. (*Pyle Decl.* ¶¶ 2, 4.) The contract was negotiated and delivered in New York. (*Id.* ¶ 11.) The claim arose in New York. (*Id.*) All likely witnesses except plaintiff work in New York and reside in the New York metropolitan area. (*Id.*) All of defendant's files and documentary evidence relating to the stock options agreements are located in New York as well. (*Id.*) The fact that the option agreements are governed by New York law also favors transfer. *See Scorpio Music, Inc. v. MCA Corp.*, No. 86-1591, 1986 U.S. Dist. LEXIS 23576, at *6 (E.D. Pa. June 27, 1986) (because California law governed state law claims, Central District of California was a more desirable forum for interpreting state law than the Eastern District of Pennsylvania).

The most important factor in the transfer analysis here, however, is a public interest: this Court's lack of personal jurisdiction over Holdings and the deficiencies relating to venue in the forum. Where a Pennsylvania court lacks personal jurisdiction over a defendant or serious jurisdictional and venue questions are raised about a defendant, "[a] transfer, obviating a

jurisdictional difficulty, has been found to serve the interests of justice within in the meaning of that language in § 1404(a)." *Kahhan v. Fort Lauderdale*, 566 F. Supp. 736, 740 (E.D. Pa. 1983).

In *Kahhan*, the court questioned whether sufficient contacts existed to create personal jurisdiction over Fort Lauderdale, observing that "substantial time, money and effort will be required to determine these preliminary jurisdictional issues which are rendered unnecessary if the action is transferred to [Florida] which has in personam jurisdiction over the defendant and is a forum where the action might have been brought." *Id.* at 740. To obviate the need to resolve questions regarding jurisdiction and venue, the court transferred the case. *Id.* In *Feldman v. The Pub of New Jersey*, No. 94-1660, 1994 U.S. Dist. Lexis 9428 (E.D. Pa. July 14, 1994) the court similarly questioned whether it had personal jurisdiction over the New Jersey defendant and noted that "to resolve the threshold question of whether the defendant may be subjected to suit in Pennsylvania would require the parties and the Court to expend substantial time and resources . . . [which] could be avoided by transferring this action to [New Jersey]." *Id.* at *7-8. Based largely on this single factor, the court transferred the action. *Id.* at *8.

Again, in *Scorpio Music*, 1986 U.S. Dist. LEXIS 23576, the Eastern District observed that "transfer is particularly appropriate when it would obviate the need for judicial resolution of jurisdictional issues [such as the] difficult venue and in personam jurisdiction questions." The court held that "a transfer would serve the interest of judicial economy by obviating the need for judicial resolution of these questions." *Id.* at *7. *See also Donelly v. Klosters Rederi*, 515 F. Supp. 5, 7 (E.D. Pa. 1981) (same).

Finally, in *The Budd Co.*, 1986 U.S. Dist. LEXIS 29348, the court found that (i) because the contract at issue contained a choice of law clause selecting Florida law, (ii) the complicated venue and jurisdictional issues present in Pennsylvania would not exist in Florida, and (iii) most

of the important witnesses and evidence would be located in Florida, transfer to Florida was warranted. *Id.* at \*8-10.

There is no question that venue is proper in New York and the courts in New York have personal jurisdiction over Holdings. We note that a federal district court can transfer a case to a different federal district, even where the transferor court does not or may not have personal jurisdiction over a defendant or venue is improper. *See Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 544 (3d Cir. 1985) ("a district court lacking personal jurisdiction can transfer a case to a district in which the case could have been brought originally"); *United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir. 1964) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not"); *The Budd Co.*, 1986 U.S. Dist. LEXIS 29348 (Pennsylvania court had power to transfer case to another district under § 1404(a) even were it decided that the court did not have personal jurisdiction over defendants).

Because there is no jurisdiction over Holdings and venue is improper in Pennsylvania, and because the majority of private interest factors and the New York choice of law clause all favor a New York forum, a transfer to the Federal District Court for the Southern District of New York is "in the interests of justice." *The Budd Co.*, 1986 U.S. Dist. LEXIS 29348.

24

## CONCLUSION

For the foregoing reasons, defendants Town Sports International Holdings, Inc.

("Holdings") and Town Sports International, LLC ("International") respectfully request that this

action be dismissed or, in the alternative, transferred to the U.S. District Court for the Southern

District of New York.

_____
Brian T. Feeney
Bryan L. Norton (BLN5927)
GREENBERG TRAURIG, LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Telephone: 215.988.7800
Facsimile: 215.988.7801

Of Counsel:

Jordan Stern, Esquire
Jesse T. Conan, Esquire
BECKER, GLYNN, MELAMED & MUFFLY, LLP
299 Park Avenue
New York, New York  10171
Telephone: 212.888.3033                          *Attorneys for Defendants*