UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------------X
FRANK J. NAPOLITANO, JR.              :
                                      :
          Plaintiff,                  :
                                      :     Civil Action No. 07-0755
    -vs.-                             :
                                      :
TOWN SPORTS INTERNATIONAL             :
HOLDINGS, INC. and TOWN SPORTS        :
INTERNATIONAL, INC.,                  :
                                      :
          Defendants.                 :
---------------------------------------------------------X

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6), RULE 12(b)(2) AND RULE 12(b)(3) AND TO CHANGE VENUE PURSUANT TO RULE 12(b)(3) AND 28 U.S.C. §§ 1404 AND 1406**

Brian T. Feeney
Bryan L. Norton (BLN 5927)
GREENBERG TRAURIG, LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: 215.988.7800

Jordan Stern, Esquire
Jesse T. Conan, Esquire
BECKER, GLYNN, MELAMED &
  MUFFLY, LLP
299 Park Avenue
New York, New York 10171
Telephone: 212.888.3033

Dated: May 11, 2007                   *Attorneys for Defendants*

## Table of Contents

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

INTRODUCTION ................................................................................................................ 1

ARGUMENT ........................................................................................................................ 2

    I.   PLAINTIFF'S ARGUMENT THAT HE PROPERLY EXERCISED HIS STOCK OPTIONS IGNORES THE TERMS OF THE STOCK OPTION AGREEMENTS ............................................................ 2

    II.   CONTRARY TO PLAINTIFF'S CLAIMS, INTERNATIONAL IS NOT A GUARANTOR UNDER THE OPTION CONTRACTS ............................................................................................ 5

    III.   HOLDINGS IS NOT SUBJECT TO SPECIFIC JURISDICTION IN PENNSYLVANIA ................................................................................... 6

    IV.   HOLDINGS IS NOT SUBJECT TO GENERAL JURISDICTION IN PENNSYLVANIA ................................................................................... 8

CONCLUSION .................................................................................................................... 13

## Table of Authorities

**Cases**                                     **Page**

*Advanced Mktg. Group, Inc. v. Bus. Payment Systems, LLC*,
   No. 05-9121, 2007 U.S. Dist. LEXIS 25838
   (S.D.N.Y. Mar. 29, 2007) ................................................................................................ 3

*Directory Dividends, Inc. v. SBC Communications, Inc.*,
   No. 01-1974, 2003 U.S. Dist. LEXIS 12214 (E.D. Pa. July 2, 2003) ............................. 13

*Gammino v. SBC Communications, Inc.*,
   No. 03-6686, 2005 U.S. Dist. LEXIS 5077 (E.D. Pa. Mar. 29, 2005) ........................... 13

*GE v. Deutz AG*,
   270 F.3d 144 (3d Cir. 2001) ............................................................................................ 7

*Gehling v. St. George's School of Med., Ltd.*,
   773 F.2d 539 (3d Cir. 1985) .......................................................................................... 11

*H. Lewis Packaging, LLC v. Spectrum Plastics, Inc.*,
   296 F. Supp. 2d 234 (D. Conn. 2003) ........................................................................... 10

*Hoffman v. Tyco Int'l, Ltd.*,
   No. 06-2961, 2006 U.S. Dist. LEXIS 91392 (E.D. Pa. Dec. 18, 2006) ............... 9, 12, 13

*Kulko v. Superior Court of CA*,
   436 U.S. 84, 98 S. Ct. 1690 (1978) ................................................................................. 8

*Lampe v. Xouth, Inc.*,
   No. 90-4067, 1991 U.S. Dist. LEXIS 2450 (E.D. Pa. Feb. 26, 1991)
   *aff'd in part, Lampe v. Xouth, Inc.*, 952 F.2d 697 (3d Cir. 1991) .................................... 3

*Leasco Data Processing Equip. Corp. v. Maxwell*,
   468 F.2d 1326 (2d Cir. 1972) ........................................................................................ 11

*Lewis-Ugdah v. HBE Corp.*,
   No. 00-3884, 2000 U.S Dist. LEXIS 17379 (E.D. Pa. Dec. 1, 2000) ............................ 12

*Litman v. Walt Disney World Co.*,
   No. 01-3891, 2002 U.S. Dist. LEXIS 5115 (E.D. Pa. Mar. 26, 2005) ........................... 10

*O'Connor v. Sandy Lane Hotel Co., Ltd.*,
   No. 04-2436, 2005 U.S. Dist. LEXIS 7397 (E.D. Pa. Apr. 28, 2005) ...................... 10-11

*R.H. Damon & Co., Inc. v. Softkey Software Products, Inc.*,
   811 F. Supp. 986 (S.D.N.Y. 1993) .................................................................................. 3

*Rose v. Cont'l Aktiengesellschaft*,
    No. 99-3794, 2001 U.S. Dist. LEXIS 24099 (E.D. Pa. Oct. 17, 2001) .................................. 12

*Sampson-Miller Associated Cos. v. Washington Homes, Inc.*,
    303 F. Supp. 739 (W.D. Pa. 1969) .................................................................................... 12

*Time Share Vacation Club v. Atlantic Resorts, Ltd.*,
    735 F.2d 61 (3d Cir. 1984) ................................................................................................. 8

*UtiliTech, Inc. v. Somerset Med. Ctr.*,
    No. 06-1232, 2006 U.S. Dist. LEXIS 40126 (E.D. Pa. June 15, 2006) .............................. 10

## PRELIMINARY STATEMENT

Defendants Town Sports International Holdings, Inc. ("Holdings") and Town Sports International, LLC ("International") submit this reply memorandum of law in further support of their motion to dismiss or alternatively, to change venue. This memorandum is supported by the Declaration of Richard Pyle, Chief Financial Officer and Executive Vice President of Holdings, dated April 11, 2007, previously submitted in support of this motion ("*Pyle Decl.*").[1]

## INTRODUCTION

In our principal memorandum, we demonstrated that this case should be dismissed for failure to state a claim because plaintiff cannot meet the pleading requirements for breach of contract under New York law. It is undisputed that plaintiff failed to provide a certified check as payment for his option exercise, as the plain terms of the contracts require. Since performance of the contracts by plaintiff is a necessary element of a proper claim of breach under New York law, and plaintiff cannot meet this elemental pleading requirement, this case must be dismissed.

We also showed that International should be dismissed as a party because it does not have a single obligation to perform under the stock option agreements at issue in this case. We demonstrated that Holdings is not subject to either general or specific personal jurisdiction in Pennsylvania, and explained that venue is improper in the Eastern District of Pennsylvania as not all defendants "reside" in the forum and all of the substantial "events or omissions" giving rise to the claim occurred in New York. Finally, as an alternative to dismissal, we suggested that the case should be transferred to the U.S. District Court for the Southern District of New York as the proper venue for the litigation.

---

[1] As a result of a June 30, 2006 corporate restructuring, the company formerly known as Town Sports International, Inc., is now Town Sports International, LLC. *Pyle Decl.*, ¶ 3.

In response, plaintiff concedes that he delivered a "post-dated personal check" (*Pl. Mem.* at 8), but contends that a certified check was not required to exercise his options. We show below (Point I) that under the plain reading of the option contracts, a certified check was required and his failure to provide one leaves him unable to assert a proper breach of contract claim under New York law. Even if (arguendo) his personal check was good enough, we demonstrate on reply that plaintiff cannot escape his undisputed failure (A) to exercise his options on time and (B) to comply with the notice provisions of the contracts.

As to International, plaintiff does not dispute that not a single binding clause in either option contract creates any obligations of International to plaintiff. Left without any textual support, plaintiff asserts that International implicitly is a guarantor of Holdings's obligations. Little needs to be said in response to this argument, other than to highlight that there is no basis for such a claim (Point II).

In response to our jurisdictional arguments, plaintiff alleges certain activities in Pennsylvania by Holdings that, he maintains, are sufficient for jurisdiction. In Points III and IV (considering specific and general jurisdiction, respectively) we demonstrate that these contacts are insufficient for him to meet his burden of proving that this Court has jurisdiction over Holdings.

Plaintiff also argues that venue is proper here and improper in the Southern District of New York. As part of Point III, we also show that these additional jurisdictional disputes further support our position that jurisdictional obstacles present in this Court – but not in New York – support a venue transfer.

2

## ARGUMENT

I. **PLAINTIFF'S ARGUMENT THAT HE PROPERLY EXERCISED HIS STOCK OPTIONS IGNORES THE TERMS OF THE STOCK OPTION AGREEMENTS.**

In our principal memorandum, we demonstrated that plaintiff admitted his failure to comply with the terms of the option contracts because he never tendered a certified check to Holdings. It follows that he is unable to plead his own performance of the contracts, as is required to assert a breach of contract claim under New York law. *Advanced Mktg. Group, Inc. v. Bus. Payment Systems, LLC*, No. 05-9121, 2007 U.S. Dist. LEXIS 25838, at **9-11 (S.D.N.Y. Mar. 29, 2007) (dismissing complaint where contract required plaintiff to provide defendant with a minimum number of new accounts per month, and by its affirmation in opposition to the motion plaintiff alleged a lesser number); *R.H. Damon & Co., Inc. v. Softkey Software Products, Inc.*, 811 F. Supp. 986, 991 (S.D.N.Y. 1993) (dismissing claims on plaintiff's failure to allege that its performance satisfied the terms of an option agreement — performance of services). Pennsylvania law is to the same effect. *See Lampe v. Xouth, Inc.*, No. 90-4067, 1991 U.S. Dist. LEXIS 2450, at **14-15 (E.D. Pa. Feb. 26, 1991) *aff'd in part, Lampe v. Xouth, Inc.*, 952 F.2d 697 (3d Cir. 1991) (dismissing breach of contract claim where plaintiff failed to allege his own compliance with the terms of the agreement at issue).

Plaintiff's response does not dispute that the option contracts require that payment be in the form of a certified check. Nor does plaintiff dispute that he failed to deliver one. Rather, he argues that under Section 8 of each option contract, proper exercise of his options did not require the tender of any payment at all because Holdings first was obligated to determine the amount of plaintiff's tax withholding. Since Holdings never calculated this amount, plaintiff argues, he was never obligated to deliver payment for his shares. (*See Pl. Mem.* at 5-9.) Yet this argument is flatly contradicted by the plain terms of the option contracts.

3

There are two contract provisions at issue here: Section 2 and Section 8. Section 2(d), entitled "Procedure for Exercise," establishes the steps plaintiff must take to exercise his options. It states, in pertinent part, that plaintiff:

> may exercise all or any portion of the Options by filing written notice of exercise to [Holdings], accompanied by a statement of [plaintiff] that he has read and been afforded an opportunity to ask questions of management of [Holdings] regarding all financial and other information provided to him regarding [Holdings], together with payment of the Option Price in accordance the provisions of Section 2(c) [of the contract]. (*Compl.*, Ex. A § 2(d) & Ex. C § 2(d) (option contracts).)

Plaintiff does not dispute that Section 2(c) of the option contracts requires payment of the Option Price by certified check. (*Compl.*, Ex. A § 2(c) & Ex. C § 2(c) (option contracts).) Importantly, Option Price is defined very specifically as an amount equal to the product of (i) the exercise price for the options to be exercised multiplied by (ii) the number of shares to be acquired through exercise of the options. (*Id.*) No mention is made anywhere in the definition of Option Price of tax withholding or any other amount. By the plain meaning of the contracts, then, without a certified check in the amount of the Option Price, plaintiff has not exercised his options.

Section 8 considers a very different subject, tax withholding, and is yet another condition for plaintiff to satisfy. Section 8(a) establishes that "[i]t shall be a condition to the exercise of any Option that [plaintiff] make appropriate payment or other provision acceptable to [Holdings] with respect to any withholding tax requirement arising under applicable statutes or regulations from such exercise." (*Compl.*, Ex. A § 8(a) & Ex. C § 8(a) (option contracts).)[2] Section 8(b) provides plaintiff with two options for satisfying a withholding tax obligation: (i) return to Holdings some of the shares received via the option exercise as payment for the withholding amount due, or (ii) direct Holdings to issue fewer shares than plaintiff would otherwise receive

4

for his options. (*Compl.*, Ex. A § 8(b) & Ex. C § 8(b).) Any shortfall between the value of option shares delivered by plaintiff to Holdings (or option shares withheld by the Holdings) is to be made up by plaintiff in cash. (*Id.*)

It follows that plaintiff's contention that under Section 8 he was not obligated to deliver payment of the Option Price until his withholding amount was determined is plainly defeated by these express contractual terms. Section 2 is simple and absolute: to exercise his options, plaintiff must deliver a certified check in the amount of the Option Price. It makes no cross-reference to Section 8. Nor does it state that plaintiff must also deliver any payment for withholding taxes in order to exercise his options, or that Holdings must calculate the tax amount. Similarly, Section 8 makes no cross-reference to Section 2. Tax withholding plays no role in the procedure for exercise. As we have shown, the contracts even contemplate payment of the withholding amount by returning shares already exercised and received.

For these reasons, plaintiff's efforts to conflate the procedures for exercise and the procedures for tax withholding must fail. The obligations are distinct, and he cannot circumvent his admitted failure to deliver a certified check under Section 2 by arguing that he has yet to honor his independent obligation to "make appropriate payment or other provision acceptable to [Holdings] with respect to any withholding tax requirement" under Section 8.

*Plaintiff's Purported Notice of Exercise was Out-of-Time and was Defective.*

Even if plaintiff's failure to deliver a certified check does not doom his case, there are two other defective elements of plaintiff's purported exercise that are fatal. Each demonstrates that plaintiff is unable to plead a breach of contract claim under New York law.

First, despite plaintiff's attempt in opposition to this motion to imply that his exercise was

---

[2] The New 2000 Common Stock Option Agreement (*Compl.*, Ex. A) inadvertently labels Sections 8(a) as 8(i).

5

timely (see *Pl. Mem.* at 8), plaintiff's purported exercise came too late.[3] Plaintiff's letter purporting to exercise options gave "notice of my intention to purchase my vested stock option shares, as of September 7, 2006." (*Pyle Decl.*, Ex. A (notice letter).) Plaintiff concedes that his termination date was June 8, 2006. *See* November 1, 2006 email from plaintiff attached as part of Exhibit A to the *Pyle Decl.*, stating that June 20, 2006 was "twelve days after my official resignation." Under the plain terms of the option contracts, plaintiff was obligated to exercise his options within 90 days of his termination, or no later than September 6, 2006. (*Compl.*, Ex. A § 4(a) & Ex. C § 4(a).) Thus, even if plaintiff had delivered a notice of exercise, it was at least one day late. (Time was of the essence of the agreements. (*Compl.*, Ex. A § 10(l) & Ex. C § 10(l).))

Second, plaintiff's purported notice was given to the wrong party. The option contracts provide that notice shall be given to Richard Pyle at Holdings. (*Compl.*, Ex. A § 10(i) & Ex. C § 10(i).) They even state that notice to the general counsel of International, Robert Herbst, "shall not constitute notice to [Holdings]." (*Id.*) Plaintiff, not surprisingly, argues in opposition to this motion that he delivered his notice of exercise to Holdings. (*See Pl. Mem.* at 5, 8-9.) But on its face, plaintiff's option exercise notice (Exhibit A to the *Pyle Decl.*) is addressed to Herbst. It therefore is ineffective notice of exercise. Plaintiff's failure to provide proper notice under the contracts prior to expiration of his options presents yet another basis to dismiss the case.

II. **CONTRARY TO PLAINTIFF'S CLAIMS, INTERNATIONAL IS NOT A GUARANTOR UNDER THE OPTION CONTRACTS.**

Our principal memorandum shows that International should be dismissed from this lawsuit because it has no rights or obligations under the option contracts. In response, plaintiff

---

[3] Although defendants dispute that plaintiff delivered any letter regarding an exercise of options or a check at all, we assume, as we must, the truth of plaintiff's allegations, solely for the purposes of this motion.

6

tries to manufacture one: that International is an implied guarantor of the contracts and "promised" that Holdings would issue shares upon exercise of the options. Revealingly, plaintiff cannot point to a single binding provision of either contract in support of this statement, because International made no promise that Holdings would issue shares, and incurred no obligation to take any action should Holdings fail to do so. International has no role in the contracts whatsoever, and was included solely as a formality as the operating company of the TSI corporate family. And plaintiff as signatory to the agreements consented to International's presence as an additional signatory but without any obligations when he executed the agreements back in 2004. Bereft of any provision in either contract to enforce against International, plaintiff has no basis for a claim against it. International should be dismissed. *See also* the discussion of this point in our principal memorandum at Point II.

### III. HOLDINGS IS NOT SUBJECT TO SPECIFIC JURISDICTION IN PENNSYLVANIA.

Plaintiff takes issue with our argument that Holdings is not subject to the specific jurisdiction of this Court. Although most of his arguments were disposed of in our principal memorandum, we respond here on reply to his arguments that specific jurisdiction is warranted because: (i) the option agreements were granted in exchange for work in Pennsylvania, and (ii) a Holdings official visited plaintiff in Pennsylvania. As we noted in our principal memorandum, "the burden rests upon the plaintiff to establish personal jurisdiction." *GE v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). We show below that the contacts plaintiff offers are insufficient to satisfy his burden.[4]

---

[4] Plaintiff also claims that International's jurisdictional contacts should somehow be imputed to Holdings as successor to International, but Holdings is not the successor to International. Town Sports International, LLC, a non-party here, is International's successor. Holdings is the parent. (*Pyle Decl.*, ¶ 3.) We address plaintiff's contention that the contacts of the subsidiaries of Holdings should be imputed to Holdings in Point IV below.

7

*The Option Agreements were Not Granted in Exchange for Work in Pennsylvania.*

In our principal memorandum, we explain that plaintiff's decision to work in Pennsylvania was his own, permitted as a convenience to him. Since a unilateral act to work in a particular forum does not create jurisdiction in that forum, we explained, plaintiff's employment in Pennsylvania cannot serve as a basis for specific jurisdiction. *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 65 (3d Cir. 1984) (where contract did not contemplate performance in forum, contract did not create jurisdiction); *Kulko v. Superior Court of CA*, 436 U.S. 84, 93-94, 98 S. Ct. 1690, 1698 (1978).

Plaintiff asserts that the options were granted to him in exchange for work in Pennsylvania. (Plaintiff does not dispute that the contracts were signed in New York, that performance of the option contracts was in New York, and that the alleged breach occurred in New York.) Plaintiff's only support for his position is his own conclusory affirmation, but it is undisputed that the option contacts do not contain any obligation that he work in Pennsylvania. (*See Compl.*, Ex. A & C.). For sure, plaintiff's assertion, without support in the option contracts themselves, is insufficient to satisfy his burden of demonstrating jurisdiction. At a very minimum, plaintiff's attempt to dispute the basis for his work in Pennsylvania supports our position that this case should be transferred to the Southern District of New York, where there is no jurisdictional question. *See* our principal brief, Point V, explaining that where jurisdiction is in question, a transfer obviating jurisdictional issues is proper.[5]

*Any Business Conducted with Mark Smith, an International Official, is Irrelevant.*

We also briefly respond to plaintiff's allegation that Mark Smith, a Holdings official,

---

[5] Additional jurisdictional disputes raised by plaintiff's opposition further support our venue transfer argument, including (i) the amount of time plaintiff spent in Pennsylvania, and (ii) where the option contracts were negotiated. *See Pl. Mem.* at 2, 16, 25. *See also* Point IV, below.

8

conducted business with plaintiff in Pennsylvania. As we established in our principal memorandum, "[s]pecific jurisdiction requires that the cause of action arise out of or be related to the defendant's forum-related activities." *Hoffman v. Tyco Int'l, Ltd.*, No. 06-2961, 2006 U.S. Dist. LEXIS 91392, at *4 (E.D. Pa. Dec. 18, 2006). Yet plaintiff makes no assertion (nor can he) that the business he allegedly conducted with Smith pertained to the terms of the option contracts. Under *Hoffman*, then, any such business is irrelevant to the jurisdictional analysis.

More importantly, plaintiff does not dispute that Holdings has no employees. (*See Pyle Decl.*, ¶ 3.) Thus, any visit by Smith was made as an officer of International, not Holdings. Since it is the contacts of Holdings, not International, that are germane to the jurisdictional analysis, any visit by Smith is irrelevant.[6]

## IV.  HOLDINGS IS NOT SUBJECT TO GENERAL JURISDICTION IN PENNSYLVANIA.

Plaintiff does not contend that Holdings is subject to general jurisdiction in Pennsylvania. He claims only that there are factual issues that require investigation by this Court to establish whether there is general jurisdiction, and he requests a hearing to present evidence. This position in itself supports our argument that this case should be transferred to the Southern District of New York, where jurisdiction and venue are clear. And in any event, the arguments plaintiff forecasts in his brief that he will make at any hearing are insufficient to satisfy his burden that there is general jurisdiction over Holdings.

Plaintiff explains that he would argue: (i) that direct activities of Holdings creates general jurisdiction, and (ii) that International is subject to general jurisdiction, and this jurisdiction is

---

[6] A word about plaintiff's assertion that he was an employee of TSI Highpoint, not International. The jurisdictional analysis is identical even should we assume, for the purposes of this motion, that plaintiff was employed by Highpoint. Either way, plaintiff admits he was not an employee of Holdings.

9

attributable to Holdings. Each argument is considered in turn.

*There is No Direct General Jurisdiction Over Holdings.*

Plaintiff first argues that after an inquiry, this Court would find direct general jurisdiction over Holdings because Holdings has granted options to plaintiff and to another individual employed in Pennsylvania. But the only authority he cites for this proposition is a Connecticut case that found no general jurisdiction over the defendant. *See H. Lewis Packaging, LLC v. Spectrum Plastics, Inc.*, 296 F. Supp. 2d 234, 239 (D. Conn. 2003). In that case, the defendant had more contacts with the forum than Holdings does – it directly "maintained a business relationship with plaintiff" in which, pursuant to contract, plaintiff was a sales agent in the forum for defendant. *Id.* at 240. Here, the contracts at issue do not require plaintiff to do anything, and he was not a sales agent for Holdings (nor can he allege as much for Holdings has no employees). For sure, plaintiff has not presented the "extensive and pervasive" evidence of "continuous and systematic contacts" required to satisfy his burden of proving general jurisdiction. *UtiliTech, Inc. v. Somerset Med. Ctr.*, No. 06-1232, 2006 U.S. Dist. LEXIS 40126, at **9-10 (E.D. Pa. June 15, 2006) (citation omitted).[7]

Perhaps understanding this, plaintiff makes another argument in support of direct jurisdiction over Holdings – that Holdings subjected itself to general jurisdiction when it "pitched" its initial public offering in Pennsylvania. But Pennsylvania case law makes plain that activity limited to a road show to market a stock offering does not create jurisdiction: "discrete publicity visits to a forum state do not demonstrate that a continuous or systematic part of the defendant's business is carried out there." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, No. 04-2436,

---

[7] At most, *Lewis* stands for the uncontroversial proposition that the use of a sales agent in a forum is a factor in weighing jurisdiction. *Litman v. Walt Disney World Co.*, No. 01-3891, 2002 U.S. Dist. LEXIS 5115, at *18 (E.D. Pa. Mar. 26, 2002) (sales agent as factor).

10

2005 U.S. Dist. LEXIS 7397, at *6 (E.D. Pa. Apr. 28, 2005) (five visits to the forum state to participate in a trade show to promote the sale of defendant's products does not create general jurisdiction); *Gehling v. St. George's School of Med., Ltd.*, 773 F.2d 539, 543 (3d Cir. 1985) (month-long publicity trip through Pennsylvania by out-of-state defendant to market itself does not create general jurisdiction). As these cases show, plaintiff's allegation that Holdings engaged in a road show in Pennsylvania is insufficient to obtain general jurisdiction.

Plaintiff's citations to two cases do not suggest otherwise. In his first case, *Leasco*, the Second Circuit considered whether alleged material misstatements made by defendant Fleming Ltd. to plaintiff during meetings in New York created jurisdiction. Since the gravamen of the complaint against Fleming was that its New York misstatements constituted fraud, the court found jurisdiction. *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1340 (2d Cir. 1972). This fact pattern is a far cry from the facts of our case. Plaintiff makes no claim for any Pennsylvania misstatements made by Holdings. Indeed, his claims for breach occurred in New York – the very location where we contend this case should be transferred. Rather than supporting plaintiff's case, *Leasco* only highlights how few contacts this case really has with Pennsylvania.

Plaintiff's second case, *Sampson-Miller* (W.D. Pa 1969) similarly does not support his position that marketing a stock offering creates general jurisdiction. In that case, Pennsylvania was the hub of defendant's public stock offering activity. Accordingly, there was a "great deal of activity in Pennsylvania centered around a proposed public issue of the corporation's stock," including an extensive array of connections to Pennsylvania not present here. Negotiations with stock brokers occurred in Pennsylvania, a letter of intent for underwriting was obtained in Pennsylvania, and legal compliance work for the public offering was performed in Pennsylvania.

*Sampson-Miller Associated Cos. v. Washington Homes, Inc.*, 303 F. Supp. 739, 740-41 (W.D. Pa. 1969). Unlike Holdings, the public offering registration statement filed with the SEC in *Sampson* designated a Pennsylvania address as the address for notice, a preliminary prospectus for the stock was printed in Pennsylvania, and a Pennsylvania bank was designated to act as stock transfer agent for the shares to be publicly issued. *Id.* at 741. It continues: defendant (i) made a stock escrow agreement in Pennsylvania, (ii) obtained mortgage debt from a Pennsylvania bank, and (iii) negotiated and placed insurance and pension plan arrangements through Pennsylvania agency. *Id.* at 740. And on top of all that, defendant also engaged in "[v]arious other contacts, meetings, negotiations, and transactions" in Pennsylvania *Id.* at 741.

*Jurisdiction Over International does Not Create Jurisdiction Over Holdings.*

Plaintiff makes an alternative argument: that Holdings should be subject to the general jurisdiction of Pennsylvania because International is subject to it. As an initial matter, plaintiff makes no effort to demonstrate jurisdiction over International. Since it is plaintiff's burden to establish jurisdiction, he cannot prove jurisdiction over Holdings through International without first presenting evidence that this Court has jurisdiction over International. For this simple reason alone, this Court should disregard plaintiff's imputation argument.

Even assuming, *arguendo*, that International is subject to Pennsylvania jurisdiction, there still is no basis for asserting jurisdiction over Holdings. As a general rule, the mere fact that a state has personal jurisdiction over a subsidiary corporation does not give that state jurisdiction over the parent corporation. *Hoffman*, 2006 U.S. Dist. LEXIS 91392, at *10; *Rose v. Cont'l Aktiengesellschaft*, No. 99-3794, 2001 U.S. Dist. LEXIS 24099, at *7 (E.D. Pa. Oct. 17, 2001); *Lewis-Ugdah v. HBE Corp.*, No. 00-3884, 2000 U.S Dist. LEXIS 17379, at **9-10 (E.D. Pa. Dec. 1, 2000). Rather, "only in extreme circumstances and upon a sufficient showing that the

parent exercised such dominion and control of the subsidiary to render it a mere instrumentality of the parent will the corporate veil be pierced to subject the parent or subsidiary to the jurisdiction of the state." *Gammino v. SBC Communications, Inc.*, No. 03-6686, 2005 U.S. Dist. LEXIS 5077, at *15 (E.D. Pa. Mar. 29, 2005).

Plaintiff argues that he has met the high bar of these tests through assertions in his affidavit that "[t]he accounting for all of TSI Holdings' subsidiaries is consolidated; employment policies and other business practices are highly standardized throughout the corporate group; and all of the companies operate under similar names and logos." *Napolitano Aff.*, ¶ 14. Notably, plaintiff is not so bold as to assert that the corporate formalities of the two companies have been disregarded.[8]

But these conclusory allegations do not even come close. In *Hoffman*, 2006 U.S. Dist. LEXIS 91392, at **12-13, the court considered allegations that defendant and its subsidiaries used a common marketing image and trademark logo, consolidated its financial accounting, and had common employee policies. The court found that this was not sufficient to impute the contacts of subsidiaries to the parent. *Id.* at 14 (stating that plaintiff "has not established that [the parent company] exerts any control over the internal workings or day-to-day operations of its subsidiaries.").

As a case cited by plaintiff explains, one must prove that "the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent." *Directory Dividends, Inc. v. SBC Communications, Inc.*, No. 01-1974, 2003 U.S. Dist. LEXIS 12214, at *9 (E.D. Pa. July 2, 2003) (imputing jurisdictional contacts of subsidiaries

---

[8] Again, we assume these facts as true but only for purposes of this motion.

13

to SBC parent company upon finding (at *22) that the various SBC companies "are not really separate entities."). Plaintiff's few conclusory assertions fall well short of meeting this exacting standard. The law makes clear that the jurisdictional contacts of International, even if *arguendo* sufficient for general jurisdiction, are not imputed to Holdings.

## CONCLUSION

For the reasons stated herein, plaintiff's action should be dismissed or, in the alternative, transferred to the U.S. District Court for the Southern District of New York.

Respectfully submitted,

/s/ Brian T. Feeney
Brian T. Feeney (BTF7960)
Bryan L. Norton (BLN5927)
GREENBERG TRAURIG, LLP
Two Commerce Square
2001 Market Street
Philadelphia, Pennsylvania 19103
Telephone: 215.988.7800
Facsimile: 215.988.7801

Jordan E. Stern, Esquire
Jesse T. Conan, Esquire
BECKER, GLYNN, MELAMED & MUFFLY, LLP
299 Park Avenue
New York, New York 10171
Telephone: 212.888.3033
*Attorneys for Defendants*

Dated: May 11, 2007

## CERTIFICATE OF SERVICE

I, Brian T. Feeney, hereby certify that on this 11th day of May 2007, a true and correct copy of Defendant Town Sports International Holdings, Inc. and Defendant Town Sports International, LLC's Application for Leave to File a Reply Memorandum in Further Support of Defendant's Motion to Dismiss and Memorandum of Law in Further Support of Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6), Rule 12(b)(2) and Rule 12(b)(3) and to Change Venue Pursuant to Rule 12(b)(3) and 28 U.S.C. §§ 1404 and 1406 were served by First Class United States mail upon the following:

        Richard G. Tuttle, Esq.
        ARCHER & GREINER, P.C.
        One South Broad Street
        Suite 1620
        Philadelphia, PA 19107

        /s/ Brian T. Feeney
        Brian T. Feeney